# { Huston *against* Wickerham.

An intruder may set up an outstanding equity in a third person, to foil the plaintiff in an ejectment brought on the legal title by a trustee.

*Held*, that a conveyance in trust for the wife of a debtor who had repurchased his freehold *jure uxoris*, sold on an execution against him, cannot be resisted under the statute 13 Eliz. by an intruder in the character of a creditor; and that his remedy is levy and sale of the particular estate on another execution.

In the hands of a purchaser at sheriff's sale, there can be no merger of a husband's freehold *jure uxoris*, in a mortgage of her reversionary estate in the fee.

THIS writ of error to the common pleas of *Washington* county brought up the record of an action of ejectment, in which William Wickherham, trustee of Mary Chess, was plaintiff, and Cyrus Huston defendant. The case was thus:

Adam Wickerham died intestate and seised, *inter alia*, of the land in dispute, leaving issue, Mary the wife of A. B. Chess, William Wickerham the plaintiff, and Sarah intermarried with William Bausman. On the 8th of October 1829, Chess, in right of his wife, elected to take this part of the estate as her property, at a valuation in the orphans' court; and it was decreed to him the 21st of November 1830. On the 16th of June 1832, Huston, the defendant, having recovered judgment against him for 705 dollars, levied in execution, and sold to Michael Millar, for 1200 dollars, the freehold of which he was seised in right of his wife; and Millar, having received the sheriff's deed for it, conveyed the same estate, on the 22d of February 1833, to the plaintiff in trust for his sister Mary, who owned the reversion of the fee.

The defendant below was shown to be in possession; but under what title, as he showed none, did not appear. He offered to prove that he purchased the land at the plaintiff's solicitation, but the offer was overruled and abandoned. He then offered, as it is expressed in the bill of exceptions, " the following chain of title:" First, the record of a judgment against Chess, at the suit of William Johnson, for 600 dollars, rendered on the 2d of February 1831 Secondly, an arrangement between Johnson and Millar, pursuant to which, satisfaction of Johnson's judgment was entered, on condition that Millar, when reimbursed the purchase-money he was to pay to the sheriff, would reinstate Chess in the ownership and possession of the property. Thirdly, for the residue of that purchase-money, deducting Johnson's judgment, a mortgage by Chess and his wife, of her reversionary interest in the fee, which was subsequently paid. And, lastly, notice of the arrangement by the

plaintiff. These were rejected and made subjects of exception. The defendant then offered the mortgages separately, to show "that the life estate of Millar was merged by the acceptance of the mortgage in fee."

Errors assigned:

1. In rejecting the evidence offered as contained in the first bill of exceptions, because it would have proved a contract executed on the part of Chess and Millar; under which Chess became a purchaser, in equity, of the estate acquired by Millar as the sheriff's vendee.

2. The judgment of Johnson was clearly a lien, if not on the land after the sale, at least on the fund arising from it; and Millar could not have acquired a title as sheriff's vendee, until he had paid the amount of his bid.

3. Millar, having received an acknowledgment of satisfaction from Johnson, of his judgment for 600 dollars, previous to the acknowledgment of the sheriff's deed, on condition of reconveying to Chess upon payment of his advances, would, in equity, after the acknowledgment of the deed, be merely a trustee for Chess, liable to reconvey to Chess on receiving the balance due.

4. The mortgage of Chess and his wife, in pursuance of the contract of Johnson as the agent of Chess, and the subsequent payment of it, was not only a fulfilment of all obligation on the part of Chess, but was a complete extinguishment of the title in Millar as the sheriff's vendee.

5. The plaintiff claiming under a title derived from Millar at a subsequent period, would not have been entitled to recover, if the evidence had been admitted.

6. It was error to reject the evidence offered, because, if admitted, it would have proved a fraud on the part of the plaintiff, and Millar against Chess and those claiming under him, sufficient in equity to have vitiated their title.

7. Admitting the right of Millar to convey to the plaintiff, the court still erred in rejecting the evidence as offered in the second bill of exceptions, because Chess, owning an estate for life in one-third of the premises, and an estate in fee for the remainder, he having paid the distributive shares of Sarah Bausman and William Wickerham, Millar accepting a mortgage in fee of the whole of the premises, merged the life estate of Chess; and the deed under which the plaintiff claims purporting to convey only the life estate of Chess, plaintiff could take nothing by the conveyance.

8. Admitting that the life estate was not merged, the verdict and judgment are erroneous: because they find the whole premises for plaintiff, contrary to the title which he himself exhibits, to wit: a conveyance from Millar of the life estate of Chess, Millar then retaining, or those claiming under him, an estate in fee for two-thirds of the property in dispute.

[Huston v. Wickerham.]

*Alden,* for plaintiff in error.
*Biddle,* for defendant in error.

The opinion of the Court was delivered by .

Gibson, C. J.—For aught that appears, the defendant below stands on the record in the character of an intruder. He gave no evidence of title in himself—at least none appears in our paper book—and the effort he made to defend himself, was directed against the title of his assailant. The rejection of the evidence offered for that purpose, is the only thing to which he took exception, and it is, consequently, the only thing he can assign for error here. At common law, a writ of error lay not for error in law, which appeared not on the record; and, therefore, an allegation, *ore tenus,* of a thing overruled, could formerly not have been assigned, because it could not have appeared on the *nisi prius* roll. To cure this defect of remedy, the statute *Westm.* 2, authorised the proceedings at *nisi prius,* or so much of them as the party desired, to be made part of the record by bill of exceptions; but nothing is better settled than that such a bill removes not the merits of the cause, or any thing more than the isolated point specifically stated in it. In assigning error on a bill of exceptions, therefore, the party cannot allege that the verdict ought to have been for him; he must put his finger on some specific act of omission or commission by the court—omitted contrary to his request, or committed positively to his prejudice. I mention this, because the merits of the case have been argued pretty much at large, and, perhaps, on an assumption of particular facts that were not attempted to be proved. Thus it has been alleged that the verdict is wrong, for having found all the land for the plaintiff, because, as it is said, the levy and sale of Chess's interest passed two-thirds of the fee to the sheriff's vendee which were not included in his conveyance to the plaintiff. If that were so, and I pretend not to say it is not, the judge ought to have been required to make it a subject of special direction; and his omission might then have been corrected on writ of error, which lies not, however, to the finding of a jury.

The defence attempted to be sustained by the rejected evidence, seems to have been, that the reimbursement of his purchase-money made Millar a trustee for Chess, from whom it moved, that chancery would compel him to reconvey; and, consequently, that there was an outstanding title in Chess, of which the defendant might avail himself.

But taking payment of purchase-money without delivery of possession, to be such part performance of an unwritten agreement as takes it out of the statute of frauds, and that Chess had reacquired the beneficial interest, what has an intruder to do with an outstanding equity in a third person? The sheriff's deed undoubtedly clothed Millar with the legal title which is sufficient to found a recovery against a wrongdoer; and this title passed by his con-

[Huston v. Wickerham.]

veyance to the plaintiff as a trustee. Assuming that Millar became a trustee for Chess, he, nevertheless, retained the legal title; and nothing is clearer than that it passes by a trustee's conveyance even in open derogation of the trust, the remedy being in chancery, which declares the grantee, when he has taken with notice or without valuable consideration, to be a trustee in the grantor's stead; and it is a familiar principle that, when he is an innocent purchaser, he takes the estate discharged. But the title passes at law, which does not even recognize the existence of such a thing as a trust, and it is just as available in an action at law as if the grantee were the beneficial owner. For the same reason, the legal estate may pass by the trustee's will, or descend to his heir. These principles are so trite, that it looks like affectation to quote an authority for them; but they are to be found in *Willis on Trustees* 84; 10 *L. L.* 84; 1 *Madd. Cha.* 455; 2 *Fonb.* b. 2, ch. 6, sect. 1, note *f.* Now by force of Millar's conveyance, the plaintiff certainly holds the legal title in trust, either for Chess or for his wife, and it is immaterial which. This ejectment is brought on the legal title; and whether for the one or the other, is a question which concerns not the defendant who has no claim to quiet enjoyment till the parties beneficially interested have settled the question of right between themselves. The trustee is answerable for the profits in the meantime; and his legal title would be worthless did it not suffice to put him in possession of them.

If Chess is to be taken for the equitable owner, the legal title of Millar, which I have said is an effective one for a recovery at law, nevertheless passed to the plaintiff; and it has never, till very lately, been doubted that an intruder cannot set up an outstanding equity in the person for whose benefit the title is attempted to be enforced. If authority were wanted for a principle so plain, it might be had in Parker *v.* Lee, in the fifth volume of *Wharton's Reports.* If Millar then might have maintained an ejectment, why may not the plaintiff his grantee? As already shown, the conveyance of a trustee is not void, but passes the legal estate, and substitutes the grantee as trustee in the grantor's stead.

But it does not follow conclusively that because Chess reimbursed the sheriff's vendee, the trust created by it, resulted to himself. Even had Millar conveyed to him, he might have executed a declaration of trust in favour of his wife; and his assent to Millar's conveyance to a third person on the same trusts, would necessarily have the same effect. Such a declaration by one indebted, would indeed be void as to creditors; but it would be valid as to every one else, and consequently as to a wrong-doer. The defendant, however, claims to be considered as if he stood in the place of Chess; but for what reason I am at a loss to discover. No conveyance from Chess or privity of estate with him, was offered to be shown; and it is doubtful whether the defendant and he stand even in the relation of debtor and creditor: for if, as it is alleged,

[Huston v. Wickerham.]

Johnson's judgment were paid by Chess and not by Millar, the amount of Millar's bid, coming as it then would to the defendant's judgment, was more than sufficient to satisfy it. If that were so, it was the defendant's business to rule the money into court and have it applied. But even if a part of his judgment remained unpaid, and Millar's conveyance were void as against it, by the 13 Eliz., the defendant's legitimate recourse to the estate reacquired, was by levy and sale. Had he purchased it in, he might have set up the statute against Millar's conveyance, and perhaps have protected his possession by that means. But a judgment creditor gains no estate in his debtor's land by intrusion. He has merely a right to sell it by execution; and for want of having become the sheriff's vendee, the defendant is not at liberty to insist that the plaintiff's conveyance is void.

The matter contained in the second bill of exceptions, was offered to show that Millar's purchase of the husband's freehold in right of his wife, was merged in the mortgage subsequently executed to him, of her reversionary estate in the fee. What effect that might be supposed to have on the plaintiff's title, I cannot discern. Had Millar procured the entire fee simple, he would not have been the less competent to convey it or a part of it. The argument on this part of the case, however, has very properly not been pressed; for it would be impossible to maintain it. We have heard of the merger of a mortgage in the title, but never before of the merger of the title in a mortgage. In the case of a mortgage, merger is producible only by joining the ownership of it to the ownership of the equity of redemption; and then it is the incumbrance which becomes extinct, not the title. But it is produced, by this or any other means, in no case in which it is the interest and intent of the incumbrancer to keep the incumbrance afoot. Dougherty *v.* Jack, 5 *Watts* 457; Forbes *v.* Dougherty, 18 *Ves.* 385; and Helmbold *v.* Man, 4 *Whart.* 42. In the first place, then, there was no union of the mortgage, or of the freehold *jure uxoris*, with the equity of redemption; for Mrs Chess had not parted with it, and for that reason alone merger was impossible. But to have merged the freehold which Millar had bought at sheriff's sale, would have subjected him, whenever the mortgagors happened to redeem, to the certain loss of what he was to pay for it—a loss he never intended to incur—and on a question of merger, intention is decisive. It was doubtless a notion that the mortgaged estate when redeemed, drew back with it, by accumulation, the purchased freehold of Millar, which induced the counsel to broach the doctrine of merger as available. How unjust it would be to despoil him of his property by its supposed cohesion with a security given for his benefit, it is unnecessary to say. Even if there could be such a thing, the enormity of it would raise a decisive presumption of intention adverse to it. The matters contained in the bills of exceptions, therefore, were properly excluded.

Judgment affirmed.