## Brolaskey *versus* McClain.

1. Where the lines are not run and marked on the ground, and there are no other circumstances equally decisive, calls for adjoiners and other fixed boundaries govern the calls for courses and distances.

2. Lines actually marked on the ground constitute the survey even where the draft or the description and the deed call for fixed boundaries.

3. A party holding the legal title in trust may maintain ejectment against every one but the equitable owners, and a wrongdoer cannot set up the title of the cestui que trust, nor object to the title of legal holder founded on a conveyance of the legal estate in abuse of the trust.

4. A wrongdoer cannot set up an outstanding equity to defeat an ejectment by a trustee on the legal title.

5. The executive council assigned to Peters "238 feet on High street, bounded on the east by Fourth street * * on the west by Springett's lot;" Peters conveyed to Poyntell 172 feet, bounded on the west by Springett, on the east, at 66 feet from Fourth street, by other ground of Peters. Poyntell's four heirs by partition assigned 43 feet to each, the easternmost bounded by the 66 feet line, the others being described as respectively adjoining the allotment immediately east, and the last the westernmost part of the "large lot" of Peters. A patent afterwards issued to Peters for the 238 feet, bounded on the west by "Springett's lot." Peters afterwards conveyed to Kerr 79 feet, bounded on the west by Springett's lot. In an ejectment by those claiming under Kerr: *Held*, that if the conveyance by Peters to Poyntell conveyed his whole 238 feet, the patent made Peters the holder of the legal title for Poyntell, and none but those claiming under him could set up his equitable title.

6. An occupier of land continued in possession for eight years, when an ejectment was brought against him and a recovery had in seven years after; he continued in possession thirteen years longer. The recovery stopped the running of the statute.

7. An owner of a house put lumber, &c., on an adjoining lot whilst building his house; erected steps on the lot for access to his house, used it in going in and out of his house, and for drying clothes. *Held*, not to be such possession as would give title under the statute.

8. An ejectment had been brought for the premises, and a recovery had against a party, and an habere issued. This was evidence in the ejectment against a party who did not claim under the former defendant, that the plaintiff had been put into possession, as throwing light on the construction of the deeds, and to rebut the presumption of an outstanding title.

9. Declarations of a tenant whilst in possession are admissible as part of *res gestæ* and as explanatory of his possession, whether he be living or dead.

February 18th 1870. Before THOMPSON, C. J., READ, SHARSWOOD and WILLIAMS, JJ. AGNEW, J., at Nisi Prius.

[Brolaskey v. McClain.]

Error to the District Court of *Philadelphia:* No. 233, to January Term, 1869.

This case was an action of ejectment, brought June 24th 1867, by Simon Brolaskey against Joseph McClain, for a lot of 20 feet in front on the south side of High street, Philadelphia, beginning at the distance of 79 feet east from the eastern side of Twentieth street (formerly Schuylkill Third street), and 176 feet deep; also for a lot on Barker street, directly on the rear of the Market street lot, of the same width, and 105 feet deep. Barker street is 25 feet wide. The draft on the next page will exhibit the premises in dispute and the circumjacent property.

On the trial before Thayer, J., the plaintiff offered in evidence a certified copy of the record of an ejectment, Richard Peters, v. Henry Wester, in Supreme Court, July 1818, No. 19, for lot on south side of High street, beginning 79 feet or thereabouts from corner of Schuylkill Third street, and extending 79 feet east along High street, and in length or depth southwardly 306 feet to the back end of the Chestnut street lots. Bounded north by High street, east by ground formerly granted by Richard Peters to William Poyntell and others, south by Chestnut street lots, and west by ground now or late of John Crane and others. November 21st 1825, verdict for plaintiff. 12th December 1825, judgment for plaintiff on the verdict.

No writ of possession appeared by the record.

Also, record of ejectment in same court, July Term 1818, No. 20, Richard Peters v. John McNamee, for same premises.

"2d December 1824. Verdict for plaintiff, subject to the opinion of the court on the whole evidence. December 27th, judgment for plaintiff on the verdict—writ of possession exit—sheriff returns 'levied and sheriff received costs.'"

Defendant objected to the evidence because it is a record not between parties to this suit nor against any one under whom defendant claims.

The plaintiff promising to show possession of Peters under this judgment, the evidence was admitted.

The plaintiff then gave in evidence, patent from the Commonwealth to Richard Peters, dated February 1st 1823, for lot of ground beginning at a corner of Herbert Springett's lot on High street, at the distance of 79 feet from Schuylkill Third street, thence along High street eastward 238 feet, thence by vacant lot 306 feet to the Chestnut street lots, thence by said lots 238 feet to a corner of Herbert Springett's lot, thence by said lot 306 feet to the beginning. Also, deed from Richard Peters to James Kerr, dated December 28th 1827, recorded February 7th 1828, for lot of ground situate on the south side of High street, at the distance of 79 feet eastward from the east side of Schuylkill Third street, containing in front on the said High street 79 feet, and in

[Brolaskey *v.* McClain.]

SCHUYLKILL FOURTH ᴏʀ NINETEENTH STREET.

| | | |
|---|---|---|
| **176** | **25** | **105** |
| JAMES PEARSON. | | JAS. PEARSON. |
| WILLIAM POYNTELL. | BARKER STREET. | N. C. NEILSON. |
| **176** | **25** | **105** |
| RICHARD PETERS. | | Rᴅ. PETERS. |
| PREMISES IN DISPUTE. | | |
| McClain's Brick House. | | |
| HERBERT SPRINGETT. | | H. SPRINGETT. |

*(Left margin: 66, 172, HIGH OR MARKET STREET, 79, 79. Right margin: BACK END OF CHESTNUT STREET LOTS, 66, 66, 172, 79, 79.)*

SCHUYLKILL THIRD ᴏʀ TWENTIETH STREET.

[Brolaskey *v.* McClain.]

length or depth that breadth southward 306 feet, bounded north-
ward by the said High street, westward by a lot now or formerly
of Herbert Springett, southward by the Chestnut street lots, and
eastward partly by ground formerly of Richard Peters, and partly
by the head or west end of a 25 feet wide street or court leading
eastward into Schuylkill Fourth street, at the distance of 176
feet southward from High street, and running parallel therewith.

He then gave evidence of the death of James Kerr, January
24th 1856, intestate, unmarried and without issue, leaving two
sisters, the children of a deceased brother, and the children of
a deceased sister.   Also deeds from the above heirs of Kerr,
dated June 12th 1861, December 9th 1862, and April 4th 1863,
for "a lot of ground situate on the south side of Market street,
at the distance of 79 feet eastward from the east side of Twentieth
street; containing in front or breadth on Market street 79 feet,
and in length or depth of that breadth southward 306 feet.
Bounded northward by the said Market street, westward by a lot
now or formerly of Herbert Springett, southward by the Chestnut
street lots, and eastward partly by ground formerly of Richard
Peters, and partly by the head of a certain 25 feet wide street
leading into Nineteenth street."

James Johnson testified for plaintiff: "Witness lived on the lot
under Kerr fifteen or sixteen years without payment of rent; he
went there in August 1836; the fence was put up in 1804; it was
Kerr's fence, and included 20 feet immediately east of defendant's
house, which lot at the trial was occupied by a blacksmith shop and
a junk shop; the lot extended to Barker street; there was another
lot back of Barker street which extended to the rear of the Chest-
nut street lots.   Witness took charge of both lots for Mr. Kerr,
and kept the fence up.   There were two other frame houses on
the west of the lot, one occupied by Dugan, and the other by Mrs.
Lasher.   Witness did not know the name of Wester in connection
with the lot; the two houses were torn down by Kerr in 1838.
Witness did not know whether Dugan and Mrs. Lasher were dead
or not."   The plaintiff then proposed to ask witness if he ever
heard Dugan say under whom he held.   The defendant objected
to the question; it was rejected, and a bill of exceptions sealed
for the plaintiff.

Defendant lived in a brick house on a lot adjoining the premises
in dispute; he had no further possession of these premises than a
pair of steps at the back of the house to afford access to his
second story; they were not used in coming in from Market
street but from Barker street.   The neighbors hung their clothes
on the lot; witness sowed corn up to the fence beyond the steps,
and continued to use the whole lot after the steps were there; he
did not occupy the lot, but had the privilege of using it in any

[Brolaskey *v.* McClain.]

way; used it for his pigs and chickens, and kept the fence up in front after defendant's house was built.

Mudge, tax-collector, proved that Kerr, and Johnson for him, paid taxes from 1843 to 1853 for the whole 79 feet through to the Chestnut street lots crossing Barker street.

W. Johnson testified that James Johnson, the former witness, lived on the lot for a number of years; his occupancy was up to the wall of defendant's house. The fence on Market street went to defendant's house. There was other evidence of the same character as to the Johnsons' occupancy.

Mary Howell testified that, at an interview at which she was present, between plaintiff and defendant, some time in or since 1865, defendant said he had never paid rent or taxes; that he did not own the lot, he thought there was no owner, and that he had as good a right as anybody; if plaintiff would not sue him or give him any trouble, he would release the lot.

Margaret McEwan testified that she occupied the lot from 1855 to 1866, by permission of Kerr, it went up to defendant's house. A Mr. Ferguson got leave from her to put lumber on it, he was to pay the taxes and take the receipts in her name, but took them in Kerr's name; plaintiff gave her $1000 to move away after he had brought suit against her for the lot. She went into possession by permission of Kerr, and promised to give him possession when he wanted it.

T. C. Steele, tax-collector, testified that taxes on the lots were paid to him by Ferguson, as Brolaskey's tenant, from 1857 to 1861, including the lot beyond Barker street. Ferguson was in possession of the whole lot, but defendant claimed the 20 feet on Market street, and witness collected no taxes for that lot. The defendant did not claim the lot on Barker street.

The plaintiff having closed, the court excluded the record of the ejectment between Peters and McNamee, and sealed a bill of exceptions for the plaintiff.

The defendant gave in evidence: Copy of the record of the Supreme Court containing the proceedings of the Supreme Executive Council, dated July 1st 1788 and December 4th 1790, authorizing a writ out of that court to assign to Richard Peters part of the unappropriated lots of Philadelphia, and the writ dated December 7th 1790, returned January 2d 1791, assigning to Peters the lot situate on the south side of High street, between Third and Fourth streets from Schuylkill, containing in front on said High street 238 feet, and in length or depth 306 feet. Bounded on the east by Fourth street, on the south by back ends of Chestnut street lots, on the west by Herbert Springett's lot, and on the north by High street, which writ and inquest thereunder were approved by the court and judgment given thereon, and writ of possession awarded, and said writ of possession was returned by

[Brolaskey *v.* McClain.]

the sheriff; that on March 30th 1798 he had delivered possession of said lot, *inter alia*, to said Richard Peters.

Also deed, Richard Peters to William Poyntell, dated October 18th 1808, for a lot of ground on the south side of High street, between Schuylkill Third and Fourth streets, containing in front on High street 172 feet and in depth 176 feet, to a court 25 feet in width; bounded west by ground said to belong to Herbert Springett and others, south by the aforesaid court, east at the distance of 66 feet from the west side of Schuylkill Fourth street by other ground of Peters and north by High street.

Also deed, Richard Peters to Noble C. Neilson, dated October 18th 1808, for a lot of ground situate on the south side of said 25 feet wide court, 172 feet in front on said court, and in length or·depth 105 feet; bounded eastward by other ground of Peters, south by the rear ends of Chestnut street lots, west by ground belonging to Herbert Springett and others and north by the aforesaid court.

Also the decision of the board of property, dated June 7th 1814, respecting the claim of Pearson and Peters to the lot 66 feet in front on High street at the corner of Schuylkill Fourth street, recited in the patent to Peters. The decision concludes:—

"The board, * * having no doubt but the jury who assigned the 238 feet to Peters made a mistake in giving Schuylkill Fourth street as a boundary, and that said Peters' claim was intended to adjoin Springett and extend the 238 feet along High street, * * * believing that there is no interference of claims, that Peters' 238 feet lies adjoining Springett's lots, and that the lots claimed by Pearson's heirs were appropriated before the assignment to Peters, they therefore decide in favor of Pearson's heirs."

The Pearson lots were the 66 feet immediately west of Schuylkill Fourth street.

Also, certified copy of draft made by surveyor-general, returned February 1st 1823, in pursuance of the decree and decision. The copy of the draft is on the next page.

The defendant offered deed, John Foot, Jr., to Henry Wester, dated May 15th 1814, for lot of ground on the south side of Market street, 20 feet in front, 79 feet east of Schuylkill Third street joining on the west property of John Crane, and on the east property of William Errett 306 feet in depth, joining property of Robert Ralston, to be followed by proof of twenty-one years' adverse possession by Wester and those claiming under him. The plaintiff objected to the offer; the court admitted the deed and sealed a bill of exceptions for the plaintiff.

Francis H. Duffee testified for defendant: Henry Wester moved in 1810 on to this property; he also occupied a portion of the last part of the.lot; he put his family into the house on this 20 feet in dispute; he lived there until he died in 1822. The family con-

[Brolaskey *v.* McClain.]

THIRD STREET SCHUYLKILL.

SURVEYED TO THE HEIRS OF JAMES ALLEN    39½

IN RIGHT OF HERBERT SPRINGETT.    39½

306 ft.

ASSIGNED BY A JURY

TO

RICHARD PETERS, Esq.

238 ft.    238 ft.

CHESTNUT STREET LOTS.    HIGH STREET.

VACANT.    13

SURVEYED TO JAMES PEARSON IN RIGHT OF

JOHN BLUNSTON AND GEORGE WOOD.    66

FOURTH STREET SCHUYLKILL.

tinued there until 1834 or 1835; his son died there after the father's death, and his daughter-in-law continued to live there; Wester always claimed that the property belonged to him.

Henry Wester, a grandson of Henry Wester before mentioned, testified that he and his sister Deborah Wester executed a deed to the defendant for the premises: witness was born in a frame house on the 20 feet lot in 1824, his father, Samuel Wester, lived on the lot until his death six or eight years afterwards, his mother rented to a Mrs. Russell and moved away; Mrs. Russell lived till the house was torn down, which was the year before the defendant took possession. In 1848 witness put up a board on the lot offering it for sale; the lot was then open; the frame house had been torn down and the defendant's brick house erected: defendant has been in the possession of the 20 feet lot since 1846, witness having given him possession by direction of his mother. Defendant then gave in evidence deed to him, dated November 28th 1865, from Henry and Deborah Wester for the 20 feet lot.

John Barr testified that defendant was in possession of the 20 feet lot in May or June 1846; that he had a chicken-house on it, and occupied it by going in and out over it and also for drying clothes.

John Tait testified that he put the stairs in the winter of 1846–47 to defendant's house on the lot, that defendant has been in possession of it ever since.

The defendant having closed, the plaintiff gave in evidence a deed of partition, dated October 25th 1816, by which the lot conveyed by Peters to Poyntell was divided amongst Poyntell's heirs, as follows:—To William Poyntell a lot of 43 feet front on the south side of High street, 66 feet west from Schuylkill Fourth street; to the trustees of Ann Johnston a lot of 43 feet front on the south side of High street, 109 feet from Schuylkill Fourth street, bounded on the east by ground allotted to William Poyntell; to the trustees of Rebecca Caldcleugh a lot of 43 feet front on the south side of High street, 152 feet west from Schuylkill Fourth street, bounded on the east by land allotted in trust for Ann Johnston; and to Sarah Relf's trustees a lot of 43 feet front on the south side of High street between Schuylkill Third and Fourth streets, "bounded eastward by ground allotted to the trustees of Rebecca Caldcleugh, southward by the said court and northward by High street aforesaid (being the westernmost part of a larger lot which Richard Peters, by deed dated October 18th 1808, conveyed to William Poyntell), &c." Each allotment is described as being part of a larger lot granted by Peters to Poyntell as above.

Plaintiff offered to show by William E. Littleton, that witness had charge of a portion of William Poyntell's estate; that the Market street lot was divided into four parts; that the parties he represented were entitled to a fourth, and that as their fourth they

[Brolaskey *v.* McClain.]

did not claim any more than the 43 feet allotted to them by the deed of partition; the defendant objected, the court rejected the offer and sealed a bill of exceptions for the plaintiff.

Plaintiff requested the court to charge the jury:

1. That the conveyance from Richard Peters to William Poyntell conveys only 172 feet front on Market street.

2. That the conveyance from Richard Peters to Noble Caldwell Neilson conveys only 172 feet front on Barker street.

3. That if they believe that beginning at a point 66 feet westward from the west side of Nineteenth (Schuylkill Fourth) street, and measuring westward 172 feet, a frontage of 79 feet would intervene between the 172 feet lot and the lot of Joseph McClain, on which a three-story brick house is erected, on the south side of Market street, below Twentieth (Schuylkill Third) street, that the deed to William Poyntell from Richard Peters does not pass the title to the intervening lot.

4. Is a similar point as respects the lots on Barker street.

5. That the evidence of possession shown by defendant to the 20 feet front lot is not sufficient to establish a title by adverse possession.

The court refused so to charge, and, after quite a minute detail of the evidence, charged:—

"If the lots conveyed to Poyntell and to Neilson by Peters, October 18th 1808, embraced the property in dispute in this action, then the subsequent conveyance by Peters to James Kerr, dated December 28th 1827, which undoubtedly embraced this property now in dispute, was void as to this property, for the title had already passed to Poyntell and to Neilson.

"Now, whether the lots conveyed to Poyntell and to Neilson in 1808 did embrace the property in dispute in the present action depends upon the construction to be put upon the deeds to Poyntell and to Neilson, and that is entirely a question of law, in regard to which it is your duty to take the direction of the court.

"If the deeds to Poyntell and to Neilson conveyed only the number of feet called for by those deeds respectively on Market street, and on the 25 feet wide court (Barker street) in the rear, then those deeds did not embrace the premises now in dispute. If, on the other hand, the deeds to Poyntell and to Neilson conveyed all the ground between Springett's lot on the west and the 66 feet lot afterwards awarded by the board of property to Pearson's heirs in 1814, then undoubtedly those deeds embraced the premises now in dispute, and conveyed the premises now in dispute—all north of Barker street to Poyntell, and all south of it to Neilson.

"This is a question in itself not free from difficulty, but it is an established principle that a description by known boundaries passes exactly what is included by them, although the measurements of

[Brolaskey *v.* McClain.]

the distances should overrun the quantity called for or fall short of it.

" Where land is described by courses and distances, and also by calls for adjoiners, the latter, where there is a discrepancy, invariably governs : Cox *v.* Couch, 8 Barr 147 ; Petts *v.* Gaw, 3 Harris 222.

" In the latter case the rule was applied to city lots.  The ground conveyed to Poyntell and to Neilson is not described in the deeds by courses and distances.  The only description is by adjoiners and quantities ;—which of these two must govern the construction ?  According to the decision of the Supreme Court, the description by adjoiners, or, what is the same thing, boundaries. What are the adjoiners or boundaries called for by these deeds on the west of the lot conveyed ?

" In the deed to Poyntell it is expressed : ' *Said* to belong to Herbert Springett and others.'  In the deed to Neilson it is ' ground belonging to Herbert Springett and others.'  Now Herbert Springett's lot is well defined as extending seventy-nine feet on Market street, east of Schuylkill Third or Twentieth street.  What was meant by ground belonging ' to Herbert Springett and others ? '  Clearly the word ' others ' could not here refer to other property of Richard Peters, the grantor, for, if the lot in question belonged to Peters, and was retained by him, and· not included in the deeds to Poyntell and Neilson, then the lots conveyed to them are nowhere bounded by Springett's ground; whereas, the deeds expressly call for Springett's ground as an adjoiner on the west.  Neither, for the same reason, can the words ' and others ' refer to land belonging to the Commonwealth, for the original assignment to Peters expressly gave him all the ground *up to Springett's lot and bounds him on the west by ' Herbert Springett's lot.' "  * * *

[" However this may be, it is clear that Springett's lot, whether he owned it alone or in common with another owner, was referred to as the western boundary of this lot conveyed to Poyntell and Neilson, by Richard Peters.  That being the case, if we are to apply the established doctrine that *adjoiners* control *quantity,* then the deeds of Peters to Poyntell and Neilson, conveyed to them the lot which is here in dispute,] and of course it could not pass by the subsequent conveyance of Peters to Kerr in 1827.

[" I am compelled therefore to instruct you as matter of law, that the plaintiff's title to the lot in question, so far as it depends upon the title derived by deed from Richard Peters has failed. The decisions of the Supreme Court leave no discretion in the matter, either to you or to me.

" The principle which they have established has become a rule of property, and its application to this case·destroys the claim of title by the plaintiff, so far as it depends upon the deed from Peters to James Kerr in 1827.]

[Brolaskey *v.* McClain.]

["Unless, therefore, he can establish his claim by adverse possession of the premises in dispute, he must fail in this action. In Pennsylvania a man may acquire a good title to land by an adverse possession of it for twenty-one years, in himself or those under whom he claims. This possession to be effectual must be an actual, continued, visible, notorious, distinct and hostile possession.]

"By a hostile possession, is not meant necessarily a possession maintained by force, but a possession is hostile when the man who has it claims it for himself against all others, and not by the acquiescence or permission of others. Thus it has been held that a possession for twenty-one years may be adverse, and such as to protect the man who holds it although he does not know that there is an owner. * * *

"[There has been in this case some proof given of the payment of taxes. In reference to that proof it is my duty to instruct you that mere payment of taxes by a person having no title cannot be considered as giving such person actual possession in contemplation of law, especially of that notorious adverse kind, necessary to constitute an ouster of the party having the legal title. Payment of taxes is of itself evidence of a claim of title, and no more. When a person has actually entered upon a tract of land, and occupied a part, payment of taxes on the whole is evidence of a claim of title to the whole, and may make adverse possession of a part amount to adverse possession of the whole. But it has not been considered of itself as constituting possession when the party never actually entered at all.] It is allowed to explain the character of the possession, and to extend it, but not of itself to constitute it. * * * [The plaintiff cannot recover under the paper title derived from Richard Peters. If he recovers at all, it must be upon proof of an adverse possession for twenty-one years by himself or those under whom he claims.]

"[If he has satisfied you that those under whom he claims have been in adverse possession of this lot for twenty-one years before the commencement of this suit, which was on the 24th June 1867, then he is entitled to recover.

"If you are not satisfied of this, he is not entitled to recover. It follows of course that if the defendant, or those under whom he claims, have been in possession for twenty-one years previously to the commencement of this action, then the plaintiff cannot recover, so that your verdict will be for the plaintiff or defendant, as you shall find this fact of possession, bearing in mind always and applying to the facts of the case the principles of law which I have already laid down."]

The verdict was for the defendant. The plaintiff took out a writ of error, and assigned the following errors:—

1. Rejecting the record in the ejectment against McNamee.

2. Rejecting evidence of the declarations of Dugan whilst occupying the lot.

3. Admitting the deed from Foot to Wester.

4. Rejecting the evidence of Littleton.

5–10. The parts of the charge included in brackets.

11–15. Disaffirming plaintiff's points.

16. Allowing the verdict to be entered for whole lot, including that part beyond Barker street.

*E. H. Weil* and *H. Wharton*, for plaintiff in error.—The objection of an outstanding title could not be set up by the defendant, who was a mere intruder. The antecedent possession in Peters and Kerr was sufficient against a trespasser : Foster *v.* McDivit, 9 Watts 341 ; Foust *v.* Ross, 1 W. & S. 501 ; Woods *v.* Lane, 2 S. & R. 53 ; Dikeman *v.* Parish, 6 Barr 210 ; Jones *v.* Tatham, 8 Harris 398 ; Shumway *v.* Phillips, 10 Id. 151 ; Green *v.* Kellum, 11 Id. 254 ; Troutman *v.* May, 9 Casey 462 ; Wheeler *v.* Winn, 3 P. F. Smith 131.

An outstanding title to defeat a plaintiff in ejectment must be subsisting and available : Foster *v.* Joice, 3 Wash. C. C. 498 ; Thomas *v.* Wright, 9 S. & R. 92 ; Huston *v.* Wickersham, 8 Watts 522 ; Hunter *v.* Cochran, 3 Barr 105 ; Wray *v.* Miller, 8 Harris 117 ; note by Judge Story to 3 Wheaton 224.

Where the plaintiff shows a primâ facie title, and the defendant seeks to maintain possession by setting up title in a third person, with whom he has no privity, he *must establish it beyond controversy :* Greenleaf *v.* Birth, 6 Peters 312.

An outstanding equitable title cannot be set up : Coxe *v.* Blanden, 1 Watts 533 ; McHenry *v.* McCall, 10 Id. 456 ; Heath *v.* Knap, 1 Barr 482 ; Lair *v.* Hunsicker, 4 Casey 115 ; Bayard *v.* Colefax, 4 Wash. C. C. 38.

Calls for boundaries or adjoiners will control the distances given, in case of a discrepancy. But the rule is overcome here, by a broader one—that both measurements and boundaries are controlled by certainty of the thing, as when in a survey, all the lines and corners are actually marked on the ground : Mageehan *v.* Adams, 2 Binn. 109 ; Walker *v.* Smith, 2 Barr 44 ; Thomas *v.* Mowrer, 3 Harris 143 ; Younkin *v.* Cowan, 10 Casey 198.

The deed from Foot to Henry Wester was wrongly admitted, for in itself it amounted to nothing, since no connection was shown between Foot and either Peters or Poyntell, in one of whom, undoubtedly, the title must have been : Schrack *v.* Zubler, 10 Casey 38.

The judge applied to plaintiff rules that ought to have been applied to the defendant ; and in so doing he understated their force. To give title under the statute, there must be open, notorious, continuous and exclusive possession, under color or claim

[*Brolaskey v. McClain.*]

of title, for at least twenty-one years: Hawk *v*. Senseman, 6 S. & R. 23; Wheeler *v*. Winn, 3 P. F. Smith 130; Adams *v*. Robinson, 6 Barr 271; De Haven *v*. Landell, 7 Casey 126; Groft *v*. Weakland, 10 Id. 304; Martin *v*. Jackson, 3 Id. 504; Potts *v*. Gilbert, 3 Wash. C. C. R. 475; Shroder *v*. Breneman, 9 Harris 228; Nearhoff *v*. Addleman, 7 Casey 279; Cooper *v*. Smith, 9 S. & R. 26; Sorber *v*. Willing, 10 Watts 141; Shaffer *v*. Lowry, 1 Casey 252; Stephens *v*. Leach, 7 Harris 263.

Independent trespassers cannot connect their possession so as to make up the statutory period: Hughs *v*. Pickering, 2 Harris 297; Olwine *v*. Holman, 11 Id. 279; Peck *v*. Ward, 6 Id. 506; Moore *v*. Collishaw, 10 Barr 224.

The possession must be exclusive: Washabaugh *v*. Entriken, 10 Casey 74; Hole *v*. Rittenhouse, 1 Casey 491; Ewing *v*. Alcorn, 4 Wright 493; Wheeler *v*. Winn, *supra*.

There must be some color or at least claim of title with which the possession is connected: Zeller *v*. Eckert, 4 Howard 289; Long *v*. Mast, 1 Jones 195; Bannon *v*. Brandon, 10 Casey 268; Martin *v*. Jackson, 3 Id. 504; McMasters *v*. Bell, 2 Penna. R. 183; Yoder *v*. Yoder, 6 Harris 471.

City lots stand on an entirely different footing from country property, as to which the cutting of timber, making of fences and building of houses, are practical claims of ownership unless otherwise explained.

Error was committed in shifting the burden from the defendant to the plaintiff. When the plaintiff shows that he has a good legal title, he is not bound to establish that he, or those under whom he claims, have been in possession twenty-one years: Price on Lim. 77; Union Canal Co. *v*. Young, 1 Wharton 426; Mercer *v*. Watson, 1 Watts 330; Rung *v*. Shoneberger, 2 Id. 27.

As to the record of the ejectment by Peters *v*. McNamee. The return of the sheriff to the writ of habere facias of what is equivalent to a delivery of possession to the plaintiff, is good primâ facie evidence that the plaintiff was then put in possession against all the world.

The judge erred in rejecting the offer to prove the declaration of Mrs. Dugan as to the character of her possession in 1838. The declarations of a tenant as to whom he holds under are admissible: 2 Stephens N. P. 1576; Crease *v*. Barrett, 1 Crompton, M. & R. 931; Carne *v*. Nicoll, 1 Bing. N. C. 430; Peaceable *v*. Watson, 4 Taunton 16; Doe *v*. Pettett, 5 B. & Ad. 223; Chambers *v*. Bernasconi, 1 C. & J. 457; Garnons *v*. Barnard, 1 Anstruthers 298; Davies *v*. Pierce, 2 T. R. 53; Doe *v*. Jones, 1 Camp. 367; Miles *v*. Miles, 8 W. & S. 136; Union Canal Company *v*. Loyd, 4 W. & S. 394; Walker *v*. Broadstock, Espinasse N. P. 458; Shaeffer *v*. Eakman, 6 P. F. Smith 151.

[Brolaskey v. McClain.]

It was error to reject evidence that Poyntell's devisees claimed no part of the 79 feet: Lodge v. Barnett, 10 Wright 477; Potts v. Everhart, 2 Casey 497.

The evidence of the payment of taxes was given only to explain the extent and nature of our possession, and to show the number of feet claimed by plaintiff, and for this purpose it was competent: Price on Limitations 106; Royer v. Benlow, 10 S. & R. 306; McCall v. Neeley, 3 Watts 69; Sailor v. Hertzog, 10 Barr 317.

*J. B. Gest*, for defendant in error.—A plaintiff must recover on the strength of his own title.

In surveys, grants and conveyances, the *boundaries* are invariably to prevail over courses and distances where there is a discrepancy: Yoder v. Fleming, 2 Yeates 311; Boar v. McCormick, 1 S. & R. 166; Hall v. Powell, 4 Id. 456; Large v. Penn, 6 Id. 488; Cox v. Couch, 8 Barr 147; Younkin v. Cowan, 10 Casey 198; Mathers v. Hegarty, 1 Wright 64; Caldwell v. Holler, 4 Wright 160; Petts v. Gaw, 3 Harris 218; Speakman v. Forepaugh, 8 Wright 372.

Peters, after his conveyance to Poyntell and Neilson, had no title left in him to convey. His subsequent patent was only in confirmation of his previous title, and enured to the benefit of his grantees: McWilliams v. Nisly, 2 S. & R. 507; Brown v. McCormick, 6 Watts 60; Root v. Crock, 7 Barr 378; Washabaugh v. Entriken, 10 Casey 74.

It is not the law that an outstanding title cannot be set up by a mere intruder: Foster v. McDivit, 9 Watts 341; Foust v. Ross, 1 W. & S. 501; Dikeman v. Parrish, 6 Barr 210; Troutman v. May, 9 Casey 455; Wheeler v. Winn, *supra*; Hole v. Rittenhouse, 1 Casey 491.

The property was not abandoned; or if it had been, it would have gone to the Commonwealth: Orr v. Cunningham, 4 W. & S. 294.

If a plaintiff claims by adverse possession, he must prove every necessary element for such title: De Haven v. Landell, 7 Casey 126; Hughs v. Pickering, 2 Harris 302; Moore v. Collishaw, 10 Barr 224. Adverse possession for twenty-one years gives a positive title: Mercer v. Watson, 1 Watts 338; Rung v. Shoneberger, 2 Id. 27; Pederick v. Searle, 5 S. & R. 240. As to the rejection of the declarations of Dugan, who was not proved to be dead, it could not have affected the result: Cox v. Couch, 8 Barr 155. He referred to Crease v. Barrett, 1 Crompton, M. & R. 931; Carne v. Nicoll, 1 Bing. N. C. 430; Peaceable v. Watson, 4 Taunt. 16; Doe v. Pettett, 5 B. & Ald. 223; Chambers v. Bernasconi, 1 C. & J. 457, and other cases cited for plaintiff in error. He cited further Buchanan v. Moore, 10 S. & R. 281; Gibblehouse v. Strong, 3 Rawle 446.

[Brolaskey *v.* McClain.]

The opinion of the court was delivered, May 14th 1869, by

WILLIAMS, J.—This was an ejectment for a lot of ground in the city of Philadelphia, on the south side of Market, formerly High street, commencing at the distance of 79 feet from the east side of Schuylkill Third, and running eastward along Market street 20 feet, and extending in depth 306 feet to the Chestnut street lots. It is intersected by a court 25 feet wide, now called Barker street, which divides the property into two lots—the one fronting on Market street being 176 feet deep, and the other fronting on Barker street being 105 feet in depth.

The plaintiff claimed that he had shown a good legal title to the premises in controversy under the deed of Richard Peters, the patentee of the Commonwealth, and his grantees; and that the defendant had shown no such possession as would give him a title under the Statute of Limitations. The defendant claimed that he had shown a subsisting and available outstanding title to the property under prior deeds of Richard Peters to Wm. Poyntell and Noble C. Neilson; and that the plaintiff had shown no such possession in himself, and those under whom he claimed, as would give him a title under the statute.

The court instructed the jury that the deeds of Peters to Poyntell and Neilson conveyed to them the lot in dispute, and of course that it could not pass by the subsequent conveyance to Kerr, and therefore that the plaintiff could not recover under the paper title derived from Peters; and if he could recover at all, it must be upon proof of adverse possession of twenty-one years by himself or those under whom he claimed.

As all the assignments of error relating to the charge may be readily grouped and arranged under one or other of the positions taken by the parties on the trial to which we have referred, it will not be necessary to notice them specifically and in detail.

The first and main question is, did the plaintiff show a good legal title to the premises in controversy? Or, did the defendant show a subsisting and available outstanding title in the devisees and heirs of Poyntell and Neilson?

To show title in himself, the plaintiff gave in evidence a patent from the Commonwealth to Richard Peters, dated February 1st 1823, for a lot 238 feet in front on the south side of High street, beginning at a corner of Herbert Springett's lot, at the distance of 79 feet from Schuylkill Third street, thence eastward along High street 238 feet, and extending in depth 306 feet to the Chestnut street lots. He next gave in evidence a deed from Richard Peters to James Kerr, dated December 28th 1827, for a lot 79 feet in front on the south side of High street, commencing at the distance of 79 feet eastward from Schuylkill Third street, thence eastward along High street 79 feet and extending in depth 306 feet; bounded west by a lot now or formerly of Herbert

[Brolaskey v. McClain.]

Springett, and east by ground formerly of Richard Peters. He then showed that James Kerr died on the 24th of January 1856, intestate, and gave in evidence three deeds from his heirs at law, dated June 12th 1861, December 9th 1862 and April 4th 1863, conveying their entire interest to the plaintiff in the above-described lot, which includes the 20 feet in controversy.

The defendant, for the purpose of showing an outstanding title superior to the plaintiff's, gave in evidence an exemplification of the record of the proceedings of the Supreme Executive Council, showing an assignment to Richard Peters in 1790 of a lot of ground on the south side of High street, containing in front 238 feet, and in depth 306 feet; bounded on the east by Schuylkill Fourth street, and on the west by Herbert Springett's lot; and the delivery of the possession to him by the sheriff on the 30th of March 1798. He next gave in evidence a deed from Richard Peters to William Poyntell, dated October 18th 1808, for a lot of ground on the south side of High street, containing in front 172 feet, and in depth 176 feet to a court 25 feet in width—now Barker street—bounded west by ground said to belong to Herbert Springett and others, and east at the distance of 66 feet from Schuylkill Fourth street, by other ground of Richard Peters: also deed from Richard Peters to Noble C. Neilson, of the same date, for a lot on the south side of the 25 feet court, containing 172 feet in front, and extending in depth 105 feet to the Chestnut street lots; bounded on the east by other ground of Richard Peters, and on the west by ground belonging to Herbert Springett and others. He then gave in evidence an exemplification of the decision of the board of property, dated June 7th 1814, deciding that 66 feet of the ground on High street adjoining Schuylkill Fourth street, part of the 238 feet assigned to Richard Peters, belonged to the heirs of James Pearson, and that Peters' lot of 238 feet lies adjoining Springett's lots. The award concludes as follows: "The board, being fully satisfied with the correctness of these facts, have no doubt but the jury who assigned the 238 feet to Richard Peters made a mistake in giving Schuylkill Fourth street as a boundary, and that said Peters' claim was intended to adjoin Herbert Springett, and extend the 238 feet eastward along High street. * * * * The board believing that there is no interference of claims, that Peters's 238 feet lies adjoining Springett's lots, and that the lots claimed by Pearson's heirs were appropriated before the assignment to Peters; they therefore decide in favor of Pearson's heirs." He also gave in evidence a certified copy of a draft made by the surveyor-general, showing the lot assigned to Peters as laid off in pursuance of the decree of the Supreme Executive Council, dated December 4th 1790, and agreeably to the decision of the board of property, dated June 7th 1814. This draft shows that the lot adjoins Springett's.

11 P. F. SMITH—11

[Brolaskey *v.* McClain.]

The plaintiff gave in evidence a deed of partition of the estate of William Poyntell, deceased, among his devisees and heirs, dated October 24th 1816, showing that the 172 feet on High street, conveyed to him by Peters, was divided into four equal shares or purparts, each 43 feet in front, and allotted as follows :—

To William Poyntell, the lot commencing 66 feet from the west side of Schuylkill Fourth street.

To the trustees of Ann Johnson, the lot commencing 109 feet from the west side of Schuylkill Fourth street.

To the trustees of Rebecca Caldcleugh, the lot commencing 152 feet from the west side of Schuylkill Fourth street.

To the trustees of Sarah Relf and children, the lot adjoining that of Rebecca Caldcleugh, " being the westernmost part of a larger lot which Richard Peters, by deed dated October 18th 1808, granted to decedent in fee." All of these lots are described as containing 43 feet in breadth on High street, and in length or depth 176 feet. He also gave in evidence the record of an ejectment brought by Richard Peters against Henry Wester, in the Supreme Court, at July Term 1818, for a lot on the south side of High street, beginning 79 feet from the corner of Schuylkill Third street, and extending 79 feet east along High street, and in length or depth 306 feet; bounded east by ground formerly granted by Richard Peters to William Poyntell and others, and west by ground now or late of John Crane and others; in which, as shown by the record, he recovered a verdict on the 21st of November 1825, and obtained judgment thereon on the 12th of the following December. He also gave in evidence the record of another ejectment, brought at the same time by Richard Peters against John McNamee for the lot above described, in which he recovered a verdict on the 2d of December 1824, subject to the opinion of the court on the whole evidence, and obtained a judgment thereon on the 27th of December, upon which a writ of possession was issued and returned by the sheriff " levied and sheriff received costs." This record was subsequently excluded by the court after the plaintiff had closed his evidence.

Did the court then rightly instruct the jury that the deeds of Peters to Poyntell and Neilson conveyed to them the lot in dispute, and that the plaintiff's title to the same, so far as it depended upon the deed of Richard Peters, had failed ? In other words, did the evidence show a good outstanding title to the lot in the devisees and heirs of Poyntell and Neilson ?

The 238 feet originally assigned to Peters, as we have seen, adjoined Schuylkill Fourth street; the whole of which, with the exception of 66 feet at the corner of Schuylkill Fourth and High street, he conveyed to Poyntell and Neilson. As there were 396 feet in the square, the 238 feet did not extend to Herbert Springett's lots, but stopped at the eastern line of the 79 feet for which

[Brolaskey v. McClain.]

Peters brought the ejectments against Wester and McNamee, and which he subsequently conveyed to James Kerr. If the deeds of Peters to Poyntell and Neilson were intended to convey only 172 feet, then it is clear that they do not embrace the 79 feet which he conveyed to Kerr. But if they were intended to convey to the line of Herbert Springett's lots, then they embraced the 79 feet of which the lot in controversy is part. There is a manifest discrepancy of 79 feet between the distance and the adjoiner called for by the deeds, and, if there were no other circumstances in the case, the call for Springett's lot as an adjoiner or boundary would undoubtedly control the distance. Where the lines are not run and marked on the ground, and there are no other circumstances equally decisive and controlling, the calls for adjoiners or other fixed boundaries invariably govern the calls for courses and distances, when there is a discrepancy between them, for the reason that it is easier to be mistaken in a measurement than it is in a boundary: Mackentile v. Savoy, 17 S. & R. 104; Murphy v. Campbell, 4 Barr 485; Cox v. Couch, 8 Id. 147; Petts v. Gaw, 3 Harris 218; Mathers & Boynton v. Hegarty, 1 Wright 64; Speakman v. Forepaugh, 8 Id. 372. But the rule is equally well settled that the lines actually marked on the ground constitute the survey and control the distances, even where the draft of the survey or the description in the deed calls for natural or other fixed boundaries: Mageehan v. Adams, 2 Binn. 109; Walker v. Smith, 2 Barr 43; Thomas v. Mowrer, 3 Harris 139; Younkin v. Cowan, 10 Casey 200; Darrah & Carrier v. Bryant, 6 P. F. Smith 69. Now it is true that in this case there are no trees showing the marks of the surveyor's axe, nor any posts or other monuments set up by him indicating the corners of the lots or the lines actually run on the ground; but we have other equivalent facts and circumstances which identify the lot with as much certainty as it could be by lines actually run and marked on the ground. It is evident that the inquest in making the original assignment to Peters, intended to assign him only 238 feet, commencing at the corner of Schuylkill Fourth street as the eastern boundary. The writ under which they were acting authorized an assignment of only 238 feet. When he conveyed to Poyntell and Neilson the 172 feet, it is manifest that he intended to convey all the lot assigned to him with the exception of the 66 feet adjoining Schuylkill Fourth street, which he regarded as the eastern boundary of his 238 feet.

There is no evidence that he claimed beyond the 238 feet until after the decision of the board of property, awarding the 66 feet next Schuylkill Fourth street to Pearson's heirs, and deciding that the jury made a mistake in giving Schuylkill Fourth street as a boundary of the 238 feet which they assigned to him, and that his claim was intended to adjoin Herbert Springett, and

[Brolaskey *v.* McClain.]

extend the 238 feet eastward along High street.  And in accordance with this decision he brought the ejectments against Wester and McNamee for the recovery of the 79 feet adjoining Herbert Springett's lots.  The evidence shows that Poyntell took possession of the 172 feet adjoining the 66 feet awarded to Pearson's heirs, and extending to the 79 feet for which Peters brought the ejectments, and that he died seised thereof.  There is not a particle of evidence that he ever had possession of any part of the 79 feet lying between his lot and Herbert Springett's, or that he ever claimed any title to it under his deed from Peters; nor is there any evidence that his devisees or heirs ever had possession of, or claimed title to, any portion of the 79 feet adjoining Herbert Springett's.  On the contrary, in 1816, eight years after the date of the deed to Poyntell, his devisees and heirs, as we have seen, divided the 172 feet equally between them, and have continued to hold the same in accordance with the partition then made.  In the ejectments brought by Peters, in 1818, against Wester and McNamee, and in his deed to Kerr he describes the 79 feet as bounded east by ground formerly granted by him to William Poyntell and others; and it has been separated from the 172 feet by a fence during the greater part, if not the whole of the intervening period.  Moreover, 59 of the 79 feet lying next the 172 feet have been in the undisturbed possession of Peters and those claiming under him ever since the recovery and the execution of the writ of possession in the ejectment against McNamee.  Is it not, then, perfectly clear, from the concurrent and subsequent acts and declarations of the parties, that the deed to Poyntell was intended to convey only the 172 feet of which the grantee took possession, and that this was the understanding of both parties?  And is it not equally clear that the call for Herbert Springett's lots, as a western boundary, was a mistake?  And if so, is the rule that a call for adjoiners controls the distance when there is a discrepancy, so inflexible that it cannot yield to the manifest intent of the parties, as evidence by their acts and declarations for a period of more than half a century?  Are we compelled so to construe the deed as to defeat, or may we so construe it as to give effect to the intent of the parties?  We think that, under the facts and circumstances of this case, the court erred in the rigid application of the rule, that calls for adjoiners control distances, and that the learned judge ought to have instructed the jury that if they believed, from the uniform acts and declarations of the parties, that the call for Springett's lot as a western boundary was a palpable mistake, and that the deeds were intended to convey only 172 feet; that then they did not embrace the land in controversy, and the title was not in the devisees and heirs of Poyntell and Neilson.

But even if the deeds to Poyntell and Neilson embraced the

79 feet, they do not show such an outstanding title in their devisees and heirs as would defeat the plaintiff's right of action. At the date of the deeds Richard Peters had only an equitable title to the land, and this was all the title that he could convey. He did not obtain the legal title until he received the patent in 1823, and, although he may have taken it in trust for Poyntell and Neilson, he was still the holder of the legal title, and might maintain an action of ejectment upon it against all persons except the equitable owners of the land. If anything has been settled by the repeated decisions of this court, it is, that the holder of the legal title to land may maintain ejectment for its recovery; and a wrongdoer or intruder cannot set up the title of the *cestui que trust* as a defence to the action; nor can he object to the title of the plaintiff founded on the conveyance of a legal estate by the trustee on the ground of its having been an abuse of the trust. It matters not to an intruder, or to one who shows no title, whether the legal title belongs absolutely to the holder thereof, or whether it is held in trust for another. He cannot set up an outstanding equity in a third person to foil the plaintiff in an ejectment brought by a trustee on the legal title: Hunt v. Crawford, 3 Penna. Rep. 426; Cox v. Blanden, 1 Watts 534; McHenry v. McCall, 10 Id. 470; Heath v. Knap, 1 Barr 491; Huston v. Wickersham, 8 Watts 519; Lair v. Hunsicker, 4 Casey 124.

In this case the defendant showed no title. He did not claim under the heirs or devisees of Poyntell or Neilson, and it is clear from the authorities that he could not set up their equitable title, if they had any, to defeat the plaintiff's action. If Peters conveyed the land to Kerr in derogation of their rights as the equitable owners, it did not lie in his mouth to call for a fulfilment of the trust, or to object to a title legal on its face, upon the allegation that it was conveyed in violation of their rights, when they themselves do not object. The court, therefore, erred in not instructing the jury that the plaintiff had shown a good legal title to the land, and was entitled to recover, unless the defendant had shown a continuous and adverse possession of the land by himself and those under whom he claimed for a period of twenty-one years. Did the defendant then show that he, and those under whom he claimed, had held its continuous and adverse possession for so long a period? If he did not, it was the duty of the court to instruct the jury that he had no title under the statute: Nearhoff v. Addleman, 7 Casey 279; Olwine v. Holman, 11 Harris 284; Huffman and Foreman v. McCrea, 6 P. F. Smith 95.

The defendant alleges that Henry Wester and his heirs held the continued and adverse possession of the lot for a period of more than twenty-one years. The evidence shows that Wester moved into a small frame house on the lot in 1810, and that he resided there until his death, in 1822; and that his family re-

[Brolaskey *v.* McClain.]

mained there until 1834 or 1835, when they moved away and rented the house to Mrs. Russell, who lived there until it was torn down in 1838.

If Wester and his heirs had the continued and adverse possession of the lot during all this time, it would be sufficient to give them a title under the statute. But, as we have already seen, Richard Peters brought an action of ejectment against Henry Wester, in 1818, and recovered a verdict and judgment therein in 1825. This recovery stopped the running of the statute, and even if the Westers held adverse possession of the lot thereafter until the house was torn down in 1838, they acquired no title under the Statute of Limitations. Nor was any title conveyed to the defendant by the delivery of the possession of the lot to him by the grandson of Henry Wester in 1846, and by his deed of the 28th of November, 1865, for the reason that he had then no title whatever to convey. Even if Mrs. Russell was his tenant, he had had no possession of the lot since 1838. He had therefore no possession to which the defendant's could be tacked. If the continuity of the possession is broken for a single day before the twenty-one years have elapsed, as is said in Olwine *v.* Holman, the previous possession goes for nothing and the wrongdoer must commence *de novo*. But the defendant himself claims to have had the continuous and adverse possession of the lot for a period of twenty-one years prior to the institution of this action. The evidence shows that he built his house on the adjoining lot in 1846, and that he moved into it early in 1847. During the time he was building the house he used the lot in controversy for hauling and depositing upon it lumber and other materials used in its construction. He put up steps leading to the second story of his house which projected over the lot in controversey; and he used the lot in going in and out of his house, and for drying clothes. It is clear that if he had no other possession of the lot than his mere use of it for the purposes mentioned, it was not such a possession as would give him title to it under the statute, even if he had used it for the full period of twenty-one years. But if the jury believed the testimony of James and Martha Johnson and Margaret McEwan, then the defendant could not have had the adverse possession of the lot continuously from 1846; for the two former testified that they occupied it under James Kerr from 1839 till 1852, and the latter that she occupied it from 1855 to 1866. But, aside from this testimony, we think that the defendant did not show such a possession of the lot as would give him a title under the statute.

The other assignments of error, which relate to the admission or rejection of evidence, may be disposed of in a few words. We think the court erred in excluding the record of the ejectment brought by Peters against McNamee. It embraced the premises in controversy, and, if admissible for no other purpose, it tended to throw

some light upon the construction of the deeds of Peters to Poyntell and Neilson, and to rebut the implication of an outstanding title in their heirs. It was a recovery on the title set up by the plaintiff here, and is primâ facie evidence that Peters was put in possession of the lot for which the action was brought, and which included the premises in dispute.

The declarations of Mrs. Dugan, if made at the time she was in the occupancy of the lot, were clearly admissible. The declarations of a tenant, made while in possession, are admissible as a part of the *res gestæ*, and have always been received in this state as explanatory of his possession; and it is immaterial whether the tenant, whose declarations are offered in evidence, is living or dead. His declarations are admissible because they accompany the possession and explain its character, and not because they are the declarations of a deceased occupier whose testimony can no longer be obtained: 1 Greenl. Ev. § 2, 109; Sheaffer v. Eakman, 6 P. F. Smith 144.

We do not discover any error in the admission of the deed of Foot to Wester, accompanied as it was with the offer to follow it up by proof of twenty-one years' adverse possession by Wester and those claiming under him. If it had been proposed to follow it with evidence showing that Wester did not go into possession under it, but that he was in possession of the lot four years before its date, as appeared from the evidence subsequently given, the court would doubtless have rejected it, as it did not convey title, nor tend to explain the character of his possession.

Nor do we see any error in the rejection of the offer to prove by Littleton that the Poyntell heirs, whom he represented, were entitled to a fourth of the lot conveyed to their ancestor by Richard Peters, and that they did not claim any more than the 43 feet allotted to them by the deed of partition. The offer was merely negative, and was objectionable for this reason, if for no other. If the plaintiff intended to show an actual disclaimer of title to the lot in controversy, the fact should have been stated in the offer, to enable the court to determine its relevancy and bearing upon the issue.

We have now considered all the questions raised by the assignments of error in this case, and for the reasons given, the judgment must be reversed and a new trial awarded.

Judgment reversed, and a *venire facias de novo* awarded.