## Robert Costello, Appellant, v. John B. Harris et al.

[Marked to be reported.]

*Waters—Easement—Prescription.*

A lower riparian owner who erects a dam and overflows the land of an upper riparian owner with the latter's knowledge, and maintains the dam for over fifty years, acquires a right to flow the land by prescription, and he cannot be disturbed in the enjoyment of his right by the successors in title of the original owner.

*Ejectment—Waters—Title—Adverse possession—Costs.*

A lower riparian owner who overflows the land of an upper riparian owner, but makes no other assertion of ownership, acquires by lapse of time merely a prescriptive right to flow the land, but no title to the land by adverse possession.

A lower riparian owner erected a dam on the land of an upper riparian owner causing the latter's land to be flooded. The upper owner made no objection or remonstrance, and the dam was maintained for over fifty

years. The upper owner had within his general inclosure the flooded land, and the lower owner made no other use of the land than to flood it. The successor in title of the upper riparian owner brought ejectment against the lower owner. Defendant set up a title by adverse possession. *Held* (1) that defendant had no title by adverse possession, but merely a prescriptive right to flood the land; (2) that under the evidence plaintiff was entitled to a verdict subject to the right of the defendant to flood the land; (3) that if defendant had disclaimed title and asserted his easement at the outset, he would have been entitled to his costs.

In the above case the building, rebuilding and repair of the successive dams were not detached and unrelated entries on the land of another on which a title by adverse possession might stand, but they were the rightful and necessary acts of one seeking to maintain and enjoy the prescriptive right to flow the land of another for the benefit of his own mills.

Argued March 14, 1894. Appeal, No. 312, Jan. T., 1894, by plaintiff, from judgment of C. P. Susquehanna Co., Aug. T., 1885, No. 406, on verdict for defendants. Before STER-RETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ. Reversed.

Ejectment for tract of land in Auburn township.

The facts appear by the opinion of the Supreme Court.

When Milton Harris was on the stand defendants made this offer: " We propose to prove by the witness that Milton Harris and those that claim under him have used the different dams continuously for forty-five years, that they have maintained gates from year to year upon it which were opened and closed a great many times. We propose to show the continuous use of it daily." Mr. McGovern: We object that it is immaterial and incompetent. Objection overruled, plaintiff excepts and bill sealed for plaintiff. [9]

The evidence was as follows: "Pond been used as long as I can remember. It was used by opening the gates when there was a surplus of water. Never without gates for any length of time. Over a month when lower dam went out. We went right to work repairing the dam; dam repaired in about a month. Cross-examined: My father built lower dam twenty-five or thirty rods below to get larger dam to hold more water; gate remained in upper dam but was not used while lower dam was in; did not use gate for two or three years; did not use that dam as long as lower dam lasted. Don't know when first dam built went out. Second dam built longer ago than I can

remember. I recollect lower dam and present one. Flow of water from lower dam destroyed second dam. He went to work inside of a week to repair second dam."

The court charged in part as follows:

" [We do not think it necessary, to make a continuous possession, that there should have been continuous work upon this dam. We think the question, rather, is this, and the burden of proof is upon the defendants to establish it: Was there such a manifest condition of things created by Milton Harris in digging for the foundations of this dam, as rendered it manifest, to any person passing upon the ground and observing it, that he was asserting the present possession and was working upon these premises? He need not stand there all the while. He need not have men there all the while, if he was continuing reasonably the operations and the work which he had done, and its appearance upon the ground was such that anybody would know, who came there, what he was doing, that he was building a dam, and that he was asserting a right there to the occupancy of the premises.] [6]

" [Besides the premises actually occupied by the dam, the premises above are in controversy, between this dam and the dam above, and the same question arises there. Were there such marks or indications, taken in connection with the work done upon this dam, as would indicate to the ordinary observer that he was claiming the right to the use and occupancy of that land? The testimony of one of the witnesses is that he cleared off this land and removed the stones and removed the roots, etc., from this land between the dam which he was about building and the dam above: was that condition of things such that in connection with the work upon the dam anybody could see, beginning with some time prior to July 10, 1864, that Mr. Harris was asserting the right to this property, and asserting the possession of this property, and operating upon it, and using it as his own? If so, we think that this would be sufficient to enable him now to assert that he had occupied this land for twenty-one years in such a manner as would enable him to maintain his right of occupancy at present.] [7]

" You will remember the evidence of the witnesses. The credibility of these witnesses and the weight to be given to their testimony is for you. We do not think that it is neces-

sary for us to enlarge upon this case. [It all lies right here, with reference to this one issue. What was done there—beginning as long ago as July 9, 1864—what was done there, what was the condition of the premises, and was it such, in connection with the operation of Mr. Harris, as to give notice to every person that he was claiming the right to use and was in possession of this property? If he was, then the verdict should be in favor of the defendant. If he was not, then the verdict should be in favor of the plaintiff.] " [8]

Plaintiff's points were among others as follows:

" 1. In order to recover, the defendants must show title to the property in dispute. The legal title is in the plaintiff. To divest this legal title, the defendants must show that they, or those under whom they claim, have maintained for twenty-one years an actual occupancy, or possession of the premises, that was adverse to the legal owner, and open and notorious by well marked and defined lines. Such actual occupancy or possession must be by residence on the property or by inclosure and cultivation without residence. *Answer:* While there are some things in this point which we should affirm, we must refuse the point because, in our view of the case, neither residence nor cultivation is an absolute necessity in the occupation of land, for the purpose of acquiring a title. If a man builds a mill upon the land of another, and occupies that mill for twenty-one years continuously, it would be sufficient to give him a title by possession, or a prescriptive title, although he never cultivated nor resided upon the land. [5]

" 2. The defendants have shown no residence upon, or cultivation of the property in dispute, and no inclosure of the same by well defined and marked lines, for a period of twenty-one years prior to the bringing of this suit; and the verdict must be for the plaintiff." Refused. [2]

" [We say to you again in answer to that point that where a party undertakes to assert possession of land by reason of the erection of some structure upon the land, or by acts done upon the land, and claims a possession outside of that covered by the built structure or acts of the party, he must, in some way, define the limits of the possession which he claims. There must be something upon the ground that will indicate to the observer just what he does claim to possess by reason of his

acts; and in that view this point should be affirmed. If it means, however, that these boundaries must be marked by a marked line or by an inclosure, then it is not correct. There must be something, however, by which the limits and extent of the claim of the party shall appear to an observer that goes upon the premises, so that they may know just what he does claim, in order to attach the possession of this land to that upon which he is actually at work.]" [2]

"3. When the first dam went out the defendants abandoned possession of the land occupied by that dam and selected another and different site and built a second dam; when the second dam went out, the defendants abandoned possession of that land and went down the stream twenty-five or thirty rods and built a third dam; when the third dam went out, the defendants abandoned the land occupied by that dam and went up the stream and repossessed themselves of the site formerly occupied by the second dam, which they continued to occupy until they took possession of the land occupied by the present dam, after which they abandoned the land occupied by the second dam, and the defendants having failed to prove that they occupied absolutely and continuously any of the land covered by any of these dams for a period of twenty-one years without interruption before the bringing of this suit, the verdict must be for the plaintiff. *Answer:* This involves the whole question which we propose to submit to you and therefore we refuse it." [1]

"4. The defendants' testimony fails to show such a hostile, adverse, actual, visible, open, and notorious and continuous possession of the land in dispute, necessary to give title under the statute—broken and occasional acts of trespass, not being sufficient, the verdict must be for the plaintiff." Refused. [3]

5. Request for binding instructions. Refused. [4]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were (1–8) above instructions; (9) ruling; quoting instructions, bill of exceptions and evidence.

*W. H. Jessup, H. C. Jessup* with him, for appellant.—Where a party relies upon the statute of limitations to defeat the holder of the legal title, he must show that all the elements which

constitute such adverse possession were affirmatively proved: DeHaven v. Landell, 31 Pa. 120 ; Hawk v. Senseman, 6 S. & R. 21 ; Adams v. Robinson, 6 Pa. 271 ; Hole v. Rittenhouse, 25 Pa. 493.

If the continuity of the possession be broken for a single day before the twenty-one years have elapsed, the previous possession goes for nothing, and the wrongdoer must commence de novo : Olwine v. Holman, 23 Pa. 279 ; Brolaskey v. McClain, 61 Pa. 146 ; Stephens v. Leach, 19 Pa. 262 ; R. R. v. Quick, 68 Pa. 189 ; Hole v. Rittenhouse, 37 Pa. 116 ; Altemus v. Trimble, 9 Pa. 232 ; Olewine v. Messmore, 128 Pa. 470.

*Miller S. Allen,* for appellee.—That ejectment will not lie for an easement is clear law, and this is not a case to which the doctrine of " election " is applicable.

To constitute adverse possession there need not be a fence, building or other improvement made, and it suffices for this purpose that visible and notorious acts of ownership are exercised over the premises in controversy for the time limited by the statute : Trickett on Limitations, 13 ; Angell on Limitations, 5th ed. 399.

Neither occupation, cultivation nor residence are necessary to constitute actual possession when the property is so situated as not to admit of any permanent useful improvement, and the continuous claim of the party has been evidenced by public acts of ownership such as he would not exercise over property which he did not claim : Ewing v. Burnett, 11 Pet. 53 ; Ellicott v. Pearl, 10 Pet. 442 ; Washburn on Real Property, 134, ed. of 1868 ; Newell on Ejectment, 725.

The use of water appears to be something more than a mere easement, and may be acquired by adverse possession : Newell on Ejectment, 722, 723, 728, 732 ; 1 A. & E. Ency. L. 263, 296 ; Coonradt v. Hill, 79 Cal. 587 ; Gould on Waters, §§ 333, 337, p. 544 ; Armstrong v. Caldwell, 53 Pa. 284 ; Trickett on Limitations, p. 20 ; Strichler v. Todd, 10 S. & R. 68.

Continuous adverse possession is a question for the jury: O'Hara v. Richardson, 46 Pa. 385 ; Fuller v. Fletcher, 44 Fed. R. 34 ; Newell on Ejectment, 732, 733, 745 ; Cunningham v. Patton, 6 Pa. 355.

OPINION BY MR. JUSTICE WILLIAMS, July 11, 1894:

We gather from the evidence in this case the following facts: Many years ago Thomas P. Cope was the owner of a considerable body of land in Susquehanna county. He caused it to be surveyed into lots for farms and offered these lots for sale to settlers. Some sixty or seventy years ago one of these lots became the property of Milton Harris who built a sawmill and a gristmill upon a stream which ran through it. To secure a sufficient water-power he went up the stream and upon another lot belonging to Cope built a dam that flowed about twenty-seven acres of Cope's land. It is evident from all the circumstances that this was done with the knowledge and consent of Cope in order to secure for settlers upon his lands the advantages which the existence of these mills would afford them. The dam has been broken from time to time, and repaired or rebuilt by Harris on the same site or one near by, and the same twenty-seven acres have been flowed for the benefit of his mills ever since they were erected. Upon these facts we have no doubt that Harris has acquired a right to maintain a dam and to flow this land by prescription. If he did not enter originally under an express grant the law will now presume one, and he cannot be disturbed at this time in the enjoyment of his prescriptive right to maintain the dam and the pond for the benefit of his mills, by the successors in title of Thomas P. Cope. Gehman v. Erdman, 105 Pa. 371; McGeorge v. Hoffman, 133 Pa. 381.

But this action is ejectment. The land described in the præcipe as amended is the land covered by the defendant's dam and by water just above the dam. The plaintiff put in evidence a connected paper title to a lot of land of which the land in controversy is part, by which it appeared that the title once held by Thomas P. Cope is now vested in the plaintiff. The defendant set up as a defence, not his easement on and over the land, but title by an actual open adverse possession of the land itself. There was no evidence as to the character of the original entry by Harris, but the circumstances indicate that it was permissive. The Copes, father and son, seem to have known of, and suffered without objection or remonstrance, the use of their land by Harris, to furnish him with water-power for his mills for more than half a century. At the same

time they used or had within their general inclosures the land down to the water's edge and to the dam. The right to build and maintain his dam and hold the water in the pond was yielded to Harris by the Copes; but beyond what was necessary to these purposes the evidence shows no acts of ownership, no inclosure, no exclusive possession by Harris. As evidence of the existence and exercise of a prescriptive right to maintain a dam, and flow the land, the acts of Harris were abundant, appropriate, and clearly proved; but did they show, or tend to show, an adverse possession of the land? Were they not referable to the use of the water for the mills below? Was there any such act of hostility to the title of Cope as put him on notice that Harris claimed not only the water-power and the right to maintain it, but the land under the water? We think that the learned judge of the court below erred in directing the attention of the jury to the title to the land when it should have been directed to the easement in and upon the land. The plaintiff may have a title to the land covered by the dam and the water held by it, but it may nevertheless be bound by an easement in favor of the defendant which nothing short of an actual abandonment by him can deprive him of. He established the existence of his right to maintain the dam and the pond by the clearest possible proof of user, with the knowledge and consent of the owners of the land, for more than sixty years; and the plaintiff cannot abridge the exercise of this right, or interfere with the maintainance of a suitable dam to hold the water, because he holds Cope's title to the land. He took the title cum onere. The easement had been fastened upon it many years before he became the purchaser, and it was visible on the ground. He cannot dislodge it. In the absence however of such an actual, notorious and hostile possession of the land by the defendant as is necessary to give title under the statute, the plaintiff might recover on his title subject to the exercise by the defendant of his prescriptive right to maintain a suitable dam thereon, and repair and rebuild the same when necessary, to the height at which the water has heretofore been raised for the use of his mills. It is not upon any one assignment of error that we reverse this judgment, but because of the theory on which the charge and the answers to the points were constructed.

The building, rebuilding and repair of the successive dams were not detached and unrelated entries on the land of another on which a title by adverse possession was to stand, but they were the rightful and necessary acts of one seeking to maintain and enjoy the prescriptive right to flow the land of another for the benefit of his own mills. These acts were performed down to and including the building of the present dam, with the knowledge and apparent consent of the owner, and when the plaintiff bought the land the dam was where it now is. There has been no change in the easement or its exercise since the plaintiff's title was acquired, and no trespass therefore upon him. He has nothing to complain of so far as the defendant is concerned except that he claims title to the land, instead of a prescriptive easement in and upon the land in controversy.

The judgment is reversed and a venire facias de novo awarded. The verdict should have been, so far as the evidence before us indicates, a verdict for the plaintiff subject to the right of the defendant to exercise his prescriptive right thereon to maintain a dam and flow the land as it has been heretofore done, for the use of his mills. If the defendant had disclaimed title and asserted his easement at the outset, we see no reason why he should not have recovered his costs in this case.