## George Deppen *v.* John D. Bogar, Appellant.

*Deeds—Effect of reference to map or plan.*

Where a map or plan is referred to in a deed it becomes a material and essential part of the conveyance, and has the same force as if copied in the deed. The conveyance in the case at bar was: " Of all that property in the town of H. belonging to me as per plot of survey made by J. R. H., surveyor, on May 23, 1866, being and consisting of 36 A. 31 P., being same property acquired by me at sheriff's sale on account of Treverton R. R."

*Tax books—Ejectment—Primary or secondary evidence.*

The books of tax assessors are not primary evidence to prove that a plaintiff in ejectment could have had no title to land in the district covered by the assessment. Whether such books would have been secondary evidence in support of defendant's title under claim of adverse possession not decided as not raised by the record.

*Deeds—Interpretation of description—Rules of construction.*

In the construction of the proper description of a deed, what is most certain and material in the description will prevail over that which is less material and less certain. The object is to ascertain the intent of the parties, and the rule to find the intent is to give the most effect to those things about which men are least liable to mistake.

If there be two lines, one corresponding with the quantity of land in the deed, and the other largely in excess, the inference will have weight in determining the true line, especially when strongly assisted by other evidence.

*Deeds—Application of description to subject-matter—Courses and distances.*

The method of locating lines by courses and distances, ignoring everything else, may result in manifest error, and when it does, this method will be ignored. Where the other lines of a description are easily to be ascertained, and there is nothing in the calls either for natural monuments or adjoiners to draw the lines away from the courses given in the instrument, the court, in order to close a survey, will project a line along its given course beyond the given length, when by so doing the quantity called for by the deed is secured and effect given to other elements of description which are at once most certain and material.

*Deeds—Application of grant to subject-matter—Province of court and jury.*

Where a question of location or the application of a grant to its proper subject-matter depends upon extrinsic evidence it should, in general, be submitted to the jury; but when the law declares the method to be followed in locating the grant, it is the province of the court not only to instruct the jury as to the abstract principles of law, but to see that they are applied to the essential undisputed facts of the case.

*Ejectment—Title by adverse possession—Declaration of right in another.*

Hostility to the title of the true owner is an indispensable ingredient of adverse possession, and the hostile possession must be continuous and notorious during the whole period. If, when a claimant enters, or afterwards, he does not claim title himself, but acknowledges the title of another, his possession must be taken as an entry or holding in subordination to the title of the person whose right he acknowledges. Declaration of right in another is inconsistent with adverse or hostile holding against such other whose title is recognized by an offer to purchase.

*Ejectment—Adverse possession—Effect of admissions as to title—Province of court and jury.*

When admissions are established as of a certain date which break the continuity of adverse possession, even for a single day, the previous possession goes for nothing, and the court will refuse to permit the jury to guess as to the effect of the erection of a fence prior to the date of established admission.

Argued Feb. 15, 1898. Appeal, No. 11, Feb. T., 1898, by defendant, from judgment of C. P. Northumberland Co., Dec. T., 1895, No. 167, on verdict for plaintiff. Before RICE, P. J., WICKHAM, BEAVER, ORLADY and SMITH, JJ. Affirmed.

Ejectment. Before SAVIDGE, P. J.

The facts sufficiently appear in the opinion of the court.

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* among others were (1, 2) in refusing defendant's offers of the assessment of Jackson township, Northumberland county, Pennsylvania, for the year 1856, in which James I. Day is assessed for thirty-eight acres of land. To be followed with subsequent assessments of said township, for the purpose of showing that James I. Day had no land in 1866, in that township, to assess. (3) In answering defendant's first point, which point and answer are as follows: "If the jury believe from the evidence that John D. Bogar and those under whom he claims, his predecessors in title, adversely occupied and used and were in the possession of the land in dispute, as their own, continuously, in connection with the land conveyed to them and him for a period exceeding twenty-one years, immediately preceding the time of bringing this suit, then the plaintiff is not entitled to recover. *Answer*: This point is affirmed as to the land south of the little run, pro-

viding you find the possession was adverse, continuous, visible, notorious and hostile, and that the defendant did not admit title in the plaintiff prior to the running of the said twenty-one years. (4) In refusing defendant's second point, which point is as follows: "It is a rule in the construction of the deeds that deed must be most strongly construed in favor of the grantee and against the grantor; and as the deed dated July 4, 1866, of James I. Day and wife, conveyed to Jehile K. Hoyt, 'all that property being in the town of Herndon, Northumberland Co., Pa., belonging to me, James I. Day, as per plot of survey made py J. R. Hilbish, surveyor, on the 22d and 23d days of May, 1866, and consisting of 37 acres and 31 perches, being the same property acquired by me, (Day) by sale of the sheriff of said county per account of the Treverton Coal and Railroad Company,' and as the land in dispute lies in the said town of Herndon, then when James I. Day made his deed to George Deppen, dated March 14, 1891, for land lying in the said town of Herndon, he had no land in the town of Herndon to convey to George Deppen, and therefore the plaintiff is not entitled to recover." (5) In refusing defendant's third point, which point is as follows: "If the jury believe from the evidence that James I. Day, by his deed dated July 4, 1866, conveyed all the land he had lying in the town of Herndon, Northumberland county, Pa., to Jehile K. Hoyt, and that Day had no land in said town that he could convey by his deed dated March 14, 1891, to George Deppen, then the plaintiff is not entitled to recover." (6) In refusing defendant's fourth point, which point is as follows: "If the jury believe from the evidence that the land in dispute lies in the town of Herndon, Jackson township, Northumberland county, Pa., then the plaintiff is not entitled to recover, because he, Day, conveyed the land he had there to Jehile K. Hoyt, by his deed dated July 4, 1866." (7) In refusing defendant's fifth point, which point is as follows: "If the jury believe from the evidence that James I. Day conveyed all his land lying in the town of Herndon, Northumberland county, Pa., to Jehile K. Hoyt, then the plaintiff is not entitled to recover." (8) In refusing defendant's sixth point, which point is as follows: "If the jury believe from the evidence that the Township Road, being the road called for by the eastern line of the land of John D. Bogar,

was taken from the land owned by the parties from or through whom John D. Bogar, the defendant, derived his title, and the road has been vacated or abandoned, then the road so vacated or abandoned, belongs to John D. Bogar, the defendant, and the plaintiff is not entitled to recover." (9) In refusing defendant's seventh point, which point is as follows : "If the jury believe from the evidence, that James I. Day sold and conveyed all the land he purchased at sheriff's sale, that David Waldron, sheriff, gave him a deed for, dated August 13, 1861, to Jehile K. Hoyt and Abraham Zeigler, then the plaintiff is not entitled to recover." (10) In refusing defendant's eighth point, which point is, as follows : "If the jury believe from the evidence that the Pickerskill mortgage line, called for in the deed of James I. Day to George Deppen, is above or on the north side of the Treverton railroad track, and that Deppen's land if he has any, lies thirty-six feet along said mortgage line, and then runs south twenty-seven degrees west, on a .parallel line with the John D. Bogar land called for, and covers land north of the Treverton railroad, and a part of the Bogar land that is not in dispute, then the plaintiff is not entitled to recover." (11) In refusing the defendant's tenth point, which point is as follows : "If the jury believe from the evidence, that part of the land claimed by the plaintiff is part of a road, and it is the only means of ingress and egress to the property conveyed by James I. Day to Jehile K. Hoyt, predecessors of the defendant in title, then said road became an appurtenant to the land conveyed; and if the balance of the land claimed by the plaintiff was adversely and continuously used and occupied by. John D. Bogar, the defendant, and his predecessors in title, as their own property, for a period exceeding twenty-one years immediately preceding the beginning of this suit, then the plaintiff is not entitled to recover, but the verdict should be for the defendant." (12) In affirming the plaintiff's eighth point, which point is as follows: "If you believe from the evidence that John D. Bogar, the defendant, in March, 1895, agreed with George Deppen, the plaintiff, or said to him that he would either lease the land in dispute or vacate the same, that such a statement was in recognition of the right of George Deppen, broke the continuity of possession and tolled the running of the statute of limitations and the verdict must be for the plaintiff. That

is, provided you find that to be so. *Answer :* I affirm the sec·
ond, third and eighth points and say to you as requested."
(13) In charging the jury as follows, viz : " James I. Day, in
1865, sold a portion of it to Abraham Zeigler, and in July, 1866,
another portion to Jehile K. Hoyt. The portion sold to Hoyt
was thirty-seven acres and thirty-one perches. Hoyt afterward
sold to Hanna and Rothermel on November 24, 1866. The
strip of land in dispute was not included in the description of
these deeds. The only testimony in the case is that of 'Squire
Hilbish as to what was included in these deeds, so far as I
recollect, and he says that this strip of land was not included.
Day's deed was for the lands which he owned in the town of
Herndon, as shown by a draft made by Surveyor Hilbish.
This draft, as testified by Mr. Hilbish, did not include the
strip of land in question, and there is no testimony of any sur-
veyor to the effect that it was included in that draft of Hil-
bish. The deed recites that this was all the land of Day in
the town of Herndon, and it is contended by the defendant
that it would be a question of fact for you to determine
whether or not he did convey all the land he had in the town
of Herndon, including, of course, this strip in question; but
inasmuch as the deed expressly conveys the land as per the
Hilbish drafts, and that draft does not include this land, I
am inclined to hold, as a matter of law, that this strip of land
was not actually conveyed by that deed to Hoyt."    (14) In
charging the jury as follows, viz : " He (Kline) went upon the
disputed strip and exercised some acts which are claimed to be
such acts of ownership, claimed by the defendant, as would
entitle him to claim from that time under the statute of limita-
tions, that is, title by possession, use and occupancy up to 1874.
What was done there by Kline, to my mind, does not amount
to sufficient to warrant the claim of title by occupancy during
that period of time."    (15) In.charging the jury as follows,.viz :
" It is contended by the plaintiff that the statute of limitation
was tolled on March 22, 1895, by an admission made by the
defendant to the plaintiff, of ownership to this strip of land in
the plaintiff. . . . Now, you will have to determine where the
title to this portion of the land in dispute is, namely : That
lying below the little run, because it was only fenced up to the
little run. You must determine, in order to ascertain in whom

the title to that land is, whether Bogar did, at the time alleged, at Mr. Wolverton's or Mr. Knight's office admit title in Mr. Deppen. If he did, then in my judgment, the statute of limitations having begun to run some time in March, 1874, according to the testimony of the plaintiff, the twenty-one years had not elapsed. . . . If you believe that Bogar made these admissions on the 22d of March, 1895, you could not infer or assume, for the purpose of making up the complete period of twenty-one years, that the fence was built prior to the 22d of March, 1874. The burden was upon the defendant to show by some testimony, at least, that the date in March when that land was enclosed was prior to the 22d of March, 1874. . . . So that if you should find that this admission was made by Bogar to Deppen as contended for, at Mr. Wolverton's or Mr. Knight's office, on the 22d of March, 1895, that admission tolled or stopped the running of the statute of limitations in favor of the defendant, and the full period, twenty-one years, not having elapsed at that time, your verdict for that portion of the land would have to be for the plaintiff, as I view the case." (16) In charging the jury as follows, viz : "As to so much of that portion of the land north of the little run has not been used by Mr. Bogar for a road, or way into his premises, I say to you there should be a verdict for the plaintiff because there is no evidence of any acts of ownership of that portion of the land such as if persisted in for twenty-one years, would ripen into title, that is, no evidence of such ownership that extends far enough back." (17) In admitting the following offer of evidence, viz : "Counsel for plaintiff offers Exhibit No. 3, October 16, 1896, for the purpose of showing the location upon the ground of the land in dispute, the scales, the public road and other operations of the locus in quo, testified to by the witnesses and of the land which the plaintiff has disclaimed title. ' Q. You locate the land in dispute from your plan of running out the line of the Pickerskill mortgage ? A. Yes, sir.' " Counsel for defendant objects to the draft marked No. 3, because the location of the land in dispute is assumed upon an incorrect survey of the Pickerskill mortgage and not according to the facts either upon the ground or upon the record of the mortgage. By the Court : Objections overruled and admit the draft. (18) In admitting the following offer of evidence, viz :

440　　　　　　　　DEPPEN v. BOGAR.

Assignment of Errors—Opinion of the Court.　[7 Pa. Superior Ct.

"Plaintiff's counsel now offer Exhibit 'A,' October 22, 1894, for the purpose of showing the location of all the lands described in the deed from (David Deppen) Day to Deppen." Counsel for defendant objects for the same reasons, assuming a line which is not authorized by any monuments on the ground nor by the records, to wit: the lines of the Pickerskill mortgage. The Court: That was for the purpose of showing what was included in the deed from Day to Deppen, which describes it as land included in the Deppen survey. By the Court: Admitted and seal a bill for the defendant.

*Charles Hower*, for appellant.—It is obvious that the learned court committed error in refusing to admit the evidence complained of in the first and second assignments of error: Irwin v. Patchen, 164 Pa. 51.

Natural or artificial landmarks, descriptive of lands conveyed, constitute the true boundaries; and the courses and distances, if added, serve but to point toward the place: Cox v. Couch, 8 Pa. 147.

*Harry S. Knight*, with him *Geo. E. Deppen* and *C. M. Clement*, for appellee.—The general principle contended for by the appellant, viz: that courses and distances should give way to adjoiners where there is a discrepancy is true, but the rule is equally well settled that lines marked on the ground constitute the survey and control distances even where the draft of the survey or the description in the deed calls for natural or other fixed boundaries. In support of this principle we cite Brolaskey v. McClain, 61 Pa. 146, Walker v. Smith, 2 Pa. 43, and Thomas v. Mowrer, 15 Pa. 139.

OPINION BY RICE, P. J., July 29, 1898:

The plaintiff claims under a deed from James I. Day, who claimed under a sheriff's sale of a tract, of which this land is a part, as the property of the Treverton Coal & R. R. Co. The defendant's first contention is, that the plaintiff took nothing by this deed, because Day had previously conveyed to Abraham Zeigler and Jehile K. Hoyt all the land that he purchased at the sheriff's sale. He conveyed forty-two acres to Zeigler in 1865, but it is not pretended that this included the land

in dispute, or any part of it. The description in the deed to Hoyt, upon which this question turns, reads as follows: "All that property lying in the town of Herndon, Northumberland county, Pennsylvania, belonging to me as per plot of survey made by J. R. Hilbish, surveyor, on the 22, 23 of May, 1866 and consisting of 36 acres and 31 perches of land, being the same property acquired by me by a sale of the sheriff on account of the Treverton Railroad." Where a map or plan is referred to in a deed it becomes a material and essential part of the conveyance, and has the same force and effect as if copied into the deed: Higgins v. Sharon Borough, 5 Pa. Superior Ct. 92, and cases there cited. See also Armstrong v. Boyd, 3 P. & W. 458. The conveyance to Hoyt, as clearly as words could make it, was by the Hilbish plot. This was referred to for the manifest purpose of identifying the subject of the grant. The metes and bounds of the land, as therein described, were as effectually adopted by reference as if they had been copied into the deed. What the grantor intended to convey was, not all the land belonging to him within the uncertain limits of what was called "the town of Herndon," but all that certain tract belonging to him described in the Hilbish plot of survey. Therefore, in order to defeat the subsequent conveyance to the plaintiff it was incumbent on the defendant to show that this description included the land in controversy. Failing in this, and the uncontradicted testimony of Mr. Hilbish being that the land in controversy was not included in his survey, the court was clearly right in instructing the jury that there was no evidence that this title ever passed out of Day until March 14, 1891, when it was conveyed to George Deppen. The fourth, fifth, sixth, seventh, ninth and thirteenth assignments of error are overruled.

In connection with the deeds to Zeigler and Hoyt in 1865 and 1866, respectively, the defendant offered in evidence the assessment books of the township for 1865 and subsequent years, for the purpose of showing that the last assessment against Day was in 1865, when he was assessed as the owner of thirty-eight acres. The ultimate purpose was to lay ground for the inference that after the conveyance to Hoyt and Zeigler, Day had no land in the township, and, therefore, that nothing passed by the deed to the plaintiff. But the proposed

evidence, standing alone, or, indeed, taken in connection with any other evidence that had been given, or was referred to in the offer, would have had no legitimate tendency to show that the land in dispute was embraced in the conveyances referrred to, or had been conveyed to other persons. What was embraced, or not embraced in those or other conveyances was susceptible of being proved by better evidence, namely, the deeds themselves, the construction of which was for the court: and no sufficient ground was laid for the introduction of explanatory or secondary evidence of such weak and inconclusive nature as the nonassessment of the land in dispute in the name of the owner of the recorded paper title. Therefore the court committed no error in refusing to receive the evidence at the time, and for the purpose for which, it was offered. Whether or not it would have been admissible after the defendant had introduced evidence in support of his claim of title by adverse possession is a question not fairly raised by the record, and we will not discuss it. The first and second assignments are overruled.

The deed from Day to the plaintiff calls for the line of the Pickersgill mortgage as the boundary of the land on the north. It is claimed by the defendant that this line is north of the Treverton railroad, whereas the land described in the writ is south of the railroad. It, therefore, became important, if not absolutely essential, to locate the lines of the Pickersgill mortgage. The accompanying draft shows the situation. The heavy lines show the plaintiff's location of the land covered by the mortgage, and the dotted lines from the point F show, approximately, where the defendant's surveyor diverged in running the lines. The description of the land begins and ends at a point in the center line of the railroad thirty-one feet distant from the bridge. The particular line to be located is the southern boundary of the mortgage, and' according to the plaintiff's contention is the line designated as H I on the accompanying draft. Its course and length as described in the mortgage are N. 88 1/4 W. 628 feet to a point at low water mark on the river S. 15 1/4 W. 206 1/2 feet from the point of beginning.

If we start at A, the point of beginning, and run north, tracing the lines of the tract by the calls and the courses and distances, no difficulty is encountered, which affects the case, until we come to the line designated as G H. Giving this its deed length, 1,179 feet, and it comes short 1,362 feet of meeting the line H I as the same is located by starting at the ending point of the description and running back over the last two lines to the point H. The defendant's surveyor stopped at the end of the deed distance of line G H, and from that point laying out the last two lines according to the courses and distances mentioned in the mortgage reached the results, first of failing to close the survey; second of locating the land covered by the mortgage eighty rods distant from the beginning point of the description, and also away from the river whereas, the mortgage expressly calls for the river as one of its boundaries; and third of reducing the area of the tract in the neighborhood of twelve acres. This method of locating the lines by the courses and distances and ignoring everything else is so manifestly erroneous that it is not seriously insisted upon by counsel, and need not be discussed.

But it is argued, that, if that method ought not to be followed, the correct way to locate the line in controversy (H I) and to close the survey, is to stop at X the deed distance of the line G H, and then run a straight line diagonally to the corner I on the river. The result will be to throw the line H I out of its course and double it in length, besides reducing the quantity of land intended to be covered by the mortgage very materially. But it is to be observed, that, so far as the evidence before us shows, there is no room for dispute as to the point of beginning and ending, nor as to the location of the lines A B, B C, C D, D E, E F and I A, nor is there any dispute as to the line F G, which materially affects the case. Nor is there anything in the calls, either for natural monuments or for adjoiners, to draw the lines H I or G H away from the courses given in the mortgage, except the discrepancy in length of the line G H. But the court held that this alone was not sufficient to draw this line away from the given course, and to double it in length, but rather, that, in order to close the survey, the line G H might be protracted beyond the length given in the mortgage. We fully concur in

this conclusion. What is most material and most certain in a description will prevail over that which is less material and less certain. The object is to ascertain the intent of the parties, and the rule to find the intent is to give the most effect to those things about which men are least liable to mistake, and nothing is more common in locating the boundaries of land than to lengthen or shorten lines in order to conform to the calls. Either the length of the line G H is incorrectly given in the mortgage or both the length and the course of the line H I are incorrect. But in determining where the two lines meet to form the southwestern corner of the land the given course of the latter line is, taking all the elements of the description into consideration, a surer guide than the given length of the former line. By accepting it as the true boundary of the land on the south we conform to the description, with respect to the calls, the courses of the lines, the length of all the lines excepting one, and the quantity of land. " Quantity, is a circumstance of slight, often of no weight in a question of title, but it may have a marked effect where the question is one of boundary. If there be two lines, one corresponding with the quantity of land in the deed, and the other largely in excess, the inference would have weight in determining the true line, especially when strongly assisted by other evidence : " Kennedy v. Lubold, 88 Pa. 246, 247.

Moreover, this location of the northern line of the Deppen deed harmonizes with the other calls of the deed, whereas that claimed by the defendant would be entirely inconsistent with them.

Where a question of location or the application of a grant to its proper subject-matter depends upon extrinsic evidence it should, in general, be submitted to the jury ; but when the law declares the method to be followed in locating the grant it is the province of the court, not only to instruct the jury as to the abstract principles of the law but to see that they are applied to the essential undisputed facts of the case. A court is not bound to submit a question to the jury upon clearly insuf-ficient evidence, such as it could not sustain a verdict upon. There being no sufficient and competent evidence to justify a verdict locating the line in controversy north of the Treverton railroad, as claimed by the defendant, the court was right in

refusing to charge as requested in his eighth point. The tenth, seventeenth and eighteenth assignments of error are overruled.

The assignments of error which relate to the defendant's claim of title by adverse possession may be considered together.

The land in controversy is a strip two and two tenths rods wide, extending along the line of the Northern Central R. R. Co. about twenty-six rods, and bounded on the other side by land which concededly belongs to the defendant. A little run crosses both tracts. Sometime in March, 1874, John Kline, the defendant's predecessor in title, fenced that portion of the land in dispute, lying south of the little run, and from that time until the time of bringing suit, in October, 1895, he and his successors in title maintained such possession of it as, if hostile and uninterrupted, would give title by adverse possession. But the plaintiff gave evidence to show that on March 22, 1895, the defendant recognized and admitted his title in this way. He alleged that, in the course of some negotiations between them concerning an adjoining piece of land, the defendant promised to give up possession of the land in dispute or to take a lease of it, and asked for thirty days' time within which he would either execute a lease or vacate. This allegation being denied by the defendant, the question of fact was fairly submitted to the jury, with the instructions, that, if they believed that the defendant made these admissions on March 22, 1895, they could not infer or assume, for the purpose of making the complete period of twenty-one years, that the fence was built prior to March 22, 1874, the burden was upon the defendant to show by some testimony at least that the land was inclosed prior to the last mentioned date. These instructions, both as to the effect of the alleged admissions and as to the burden of proof were clearly right. The element of hostility to the title of the true owner is an indispensable ingredient of adverse possession. The hostile possession must be continuous and notorious during the whole period. The claimant must, in the language of Chief Justice GIBSON, " keep his flag flying, and present a hostile front to all adverse pretentions." If a person enters into possession of land, and holds it, without more, the presumption is that he claims title. A possession of more that twenty-one years, under such cir-

cumstances, would be adverse; and as such would give title. But if, when he enters, or afterwards, he does not claim title himself, but acknowledges the title of another, his possession must be taken as an entry or holding in subordination to the title of the person whose right he acknowledges. And this qualification of the rule is necessary to protect rights which might otherwise be lost by the fraud and artifice of the person in actual possession. A declaration that the right was in another, might be intended, and would frequently have the effect of putting the legal owner off his guard. Such a declaration is inconsistent with an adverse or hostile holding: Rung v. Shoneberger, 2 W. 23. Hence recognition of the owner's title and an offer to purchase will effectually rebut the allegation of adverse possession: Miller v. Keene, 5 W. 348; Sailor v. Hertzogg, 2 Pa. 182. "To suffer an occupant to amuse the proprietor with professions of submission till the title were barred by time, and then to set him at defiance, would give an effect to artifice which the legislature never intended to produce:" GIBSON, C. J., in Miller v. Keene, supra. So, where the person in possession agreed with the true owner that he would pay the taxes of the whole tract for the use of the fields in his possession, and he continued so to hold, it was decided that his possession and payment of taxes enured to the benefit of the plaintiff: Read v. Thompson, 5 Pa. 327. So where the owner, in reply to a previous letter of the defendant, refused to make a contract for the sale of the land but inclosed a lease of the same for one year, and the defendant wrote, in reply, giving reasons why he would not execute the lease sent him, but offering to execute the lease if the term were extended for two years instead of one, it was held that this was such a recognition of the owner's title as to overthrow the defense of title by adverse possession even if, in other respects, it had been made out. These and other authorities that might be cited fully vindicate the charge as to the effect of such admissions as were shown in the present case. The fact that they were made on March 22, 1895, having been established to the satisfaction of the jury, the court committed no error in refusing to permit them to guess that the fence was built prior to March 22, 1874. "If the continuity of the possession is broken for a single day before the twenty-one years have elapsed, as

is said in Olwine v. Holman, 23 Pa. 279, the previous posses-
sion goes for nothing, and the wrongdoer must begin de novo : "
Brolaskey v. McClain, 61 Pa. 146. The same strictness is
observed where the possession ceases for a time to be hostile.
The case of the wrongdoer is not to be helped out by charita-
ble inferences not warranted by any testimony. The burden
of proof was on the defendant. It was incumbent on him to
show affirmatively that his entry was twenty-one years before
the date of his recognition of the plaintiff's ownership ; and if,
from lapse of memory or other cause, the witnesses were
unable to fix the date, he, and not the true owner must be the
sufferer.

It is argued that the title was complete in the defendant on
March 22, 1895, and the admission, if he made it, would not
affect the same. But the plaintiff claims, and the court so in-
structed the jury, that prior to the time when Klien enclosed
that part lying south of the little run there was no such ad-
verse and exclusive occupancy of the land in dispute as is es-
sential to give title by adverse possession. We have carefully
examined all of the evidence with special reference to the
assignments of error directed to this portion of the charge.
While some of the defendant's witnesses use general expres-
sions, which, standing by themselves, might warrant a jury in
inferring that the whole of the land lying between the river
and the line of the N. C. R. R. was taken possession of for
the uses of a coal yard and other purposes, yet a careful scru-
tiny of their testimony, taken as a whole, has convinced us,
that the facts, as to the use of the land in dispute, even as
asserted by them, are correctly summarized in the judge's
charge. Prior to March, 1874, the land appears not to have
been inclosed, or cultivated, or occupied otherwise than by a
drive way—not well defined—to the coal and lumber yards on
the defendant's land. The claim of a mere easement or other
right in land less than the entire fee does not confer any ad-
verse right to the fee simple ; to have this effect under the
statute of limitations the claim must be of the entire title,
exclusive of the title of any other person. As illustrative of
this general principle we refer to the case of Costello v. Harris
162 Pa. 397, where it was held that a lower riparian owner
who erected a dam, and overflowed the land of an upper owner,

with the latter's knowledge, and maintained the dam for over fifty years, acquired a prescriptive right to flow the land, but no title to the land by adverse possession. It seems to us that this principle is applicable here. The fact that the owners of the land and their customers and visitors drive across adjoining land of a third person indicates no certain intent to claim more than a way, and, without more, such use will not ripen into a title by adverse possession to the fee of the whole of the lot thus crossed. But the defendant's rights in this regard were fully protected by instructions to the jury, which, to prevent misapprehension of the point decided, it will be well to quote in this connection. "The plaintiff has conceded by a paper filed in the case this morning, known as a disclaimer, that they are not entitled to a verdict in this case for that portion of this strip north of the little run, used as a way into these operations, and they say it is a strip 13 feet wide along the western line extending from the northern line to the little run; they have given up their claim to that much. And if you find there is no more than that much used for a way into this operation, no more than that much reasonably necessary for a way, no more than what they have given up, then you would find for all the lands north of the little run for the plaintiff except the lands disclaimed. That would be all you would have to do, because you need make no finding for the land to which they have given up claim, 13 feet, but if you find there is more used there as a driveway than the 13 feet given up, or that more is reasonably necessary than the 13 feet given up, then you would have to find how much more is necessary and you would have to find for the defendant for so much of that strip north of the little run as is necessary for a way in and out to Mr. Bogar's premises in excess of what has been given up or disclaimed and the balance for Mr. Deppen." As to the land lying north of the little run, excepting that part used, and thus secured to the defendant, as a way, the court was justified by the facts in giving binding instructions to the effect that title in the defendant by adverse possession had not been made out. In Pennsylvania the rule is, that upon a given state of facts which are admitted or distinctly proved, whether possession is adverse or not is a question of law; but in a doubtful case, the truth of the facts must be

submitted to the jury: Rung v. Shoneberger, 2 W. 23. The fact of possession is for the jury; the kind and length of that possession, to be effectual is for the court: Groft v. Weakland, 34 Pa. 304, 308. . Where such title is asserted, either by the plaintiff or the defendant, the court should see, that there is evidence to go to the jury on all the essential points. If it be wanting as to any of them, then an essential of title is wanting, and the duty of the judge is plain. He should instruct the jury that there is not sufficient evidence to make out the title: DeHaven v. Landell, 31 Pa. 120, 126; Olwine v. Holman, 23 Pa. 279, 285; Groft v. Weakland, supra; Huffman v. McCrea, 56 Pa. 95; Brolaskey v. McClain, 61 Pa. 146, 165. The third, eleventh, twelfth, fourteenth, fifteenth, and sixteenth assignments are overruled.

The third section of the Act of February 27, 1849, P. L. 90, provides that where a highway has been vacated by authority of law, the adjoining owners shall retain the same to the center unless the ground was taken in unequal proportions from the then owners thereof and in such case they shall reclaim in proportion as contributed by such owners or by those under whom they shall have derived their titles. To entitle the defendant to an unqualified affirmance of his sixth point it was incumbent on him to show, that, (1) the land in dispute was originally a public highway; which (2) had been located wholly on land owned by parties from or through whom he derived his title; and (3) had been vacated by authority of law. The fact that in the deeds from Hoyt to Hanna and Rothermel (November, 1866), from Hanna and Rothermel to Kline et al. (1870), from Kline to Lahr (1882), and from Lahr to the defendant (1888) the defendant's land is described as abutting on a township road does not establish the fact, as against James I. Day and his grantee of the land in dispute, that all the land lying between the railroad and the land conveyed was a township road— they not being parties or privies to the conveyances referred to. Much less would it warrant an inference that the alleged road was located wholly on land owned by those from whom the defendant derived title, and was vacated after Day's conveyance to Hoyt. And assuming that the land in dispute was at one time a public highway yet if it was vacated before the date of the latter conveyance it re-

verted to Day, and the title did not pass to Hoyt unless his deed included it. The truth is, that the evidence as to the existence of a public highway over or adjoining the land in dispute; its location and width; when and how it was established; the fact that it was vacated by authority of law, and when and how; the ownership of the land at the time, and other essential facts, is so vague, confused and uncertain that the court could not well have based any definite legal instructions upon it; at all events the point could not have been affirmed, as it was drawn, without manifest error. The eighth assignment is overruled.

The case was well tried, and the judgment is now affirmed.