## F. J. Schwab *v.* Sarah Bickel or Helen Barron, Appellant.

*Province of court and jury—Adverse possession.*

What constitutes adverse possession is for the court; but the facts supporting the claim must be established to the satisfaction of the jury. The reason for this rule is that title being shown the law presumes the true owner to be in possession until adverse possession is proved to begin.

*Adverse possession—Essentials to support.*

To support adverse possession and set the statute of limitations running, there must be an actual entry and usage of the property such as the true owner thereof might make, without leave or permission, with the intention to retain possession and profits thereof as his own; this intention must be manifest and may be inferred from the manner of occupancy. In other words the essentials to constitute adverse possession are, (1) actual possession, which shall be (2) hostile and adverse, (3) continuous, (4) visible, open, notorious and exclusive, and (5) held under color or claim of title.

*Trespass by tenants—Results as to landlord—Adverse possession.*

A trespass by tenants demonstrating all the essentials of an adverse possession relates to the landlord with all responsibilities and advantages therefrom when knowledge of and acquiescence in the trespass are brought home to the landlord.

*Referee's failure to find facts, when not conclusive.*

The rule that a referee's findings of fact are as conclusive as a verdict of a jury does not preclude inquiry into the evidence, when it is apparent that the referee failed to find pertinent facts, not because he did not believe the witnesses but because he deemed the facts testified by them immaterial.

Argued Jan. 9, 1899. Appeal, No. 2, Jan. T., 1899, by defendant, from judgment of C. P. Luzerne Co., Oct. T., 1894, No. 1047, dismissing exceptions to referee's report, finding for the plaintiff, in an action of ejectment. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Reversed. Opinion by BEAVER, J.

Ejectment.  Before SCHUYLER, P. J., of the 3d judicial district, specially presiding.

It appears from the referee's report that this action arose about the right to the possession of a narrow strip of land something over two feet wide and fifty-nine feet in length, defendant claiming title to it by adverse possession under the statute of limitations.

The facts sufficiently appear in the opinion of the court.

The referee found that the title to the land in dispute, which the plaintiff established in himself, had not been divested by an adverse possession of the defendant and persons under whom she claims, and that the judgment be entered for the plaintiff for the land contained in the amended description.  Defendant appealed.

*Errors assigned* among others were (3) to that portion of the eleventh finding of fact, which is as follows : " There is no evidence that Rutledge ever authorized his lessee to claim or to inclose the land, and there is no evidence that Schwab ever had any actual notice of any hostile claim by Rutledge, though he knew of the erection of the building within two or three years after it was built."   (5) In his answer to defendant's third request of finding of law, which is as follows : " The third is a mixed conclusion of law and fact.  The law is correctly stated, but it is not applicable to the facts of this case.  Rutledge never took possession by or through his tenant.  On the contrary, he declined to make or pay for the improvements, and there was no evidence that he took additional rent for them after they were made."   (6) In his answer to defendant's fourth request for finding of law, the request being as follows : " The improvements placed upon the ground in dispute by Bonnie Reed in 1869, with the knowledge and consent of her landlord, Rutledge, would render him liable in damages for the same, for the reason that he ratified it by accepting rent from her.  Hence, the use of the land for the statutory period, twenty-one years, in an open, notorious, continuous and hostile manner would inure to his benefit and give him a title to same by adverse possession.  *Answer :* The fourth conclusion is denied as incorrect as to both law and fact."   (7) In his answer to defendant's sixth and seventh requests for findings of law, which is as follows :

"The sixth conclusion is based upon the idea that there was a boundary fence between the Rutledge lot and the Schwab lot, which I have found to be incorrect.   The seventh conclusion is denied.   I do not think the trespass of Rutledge's tenants could, under any circumstances, give him a claim to title to his neighbor's land."   (9) To that portion of the judge's opinion on the referee's report and exceptions, which is as follows : "All these exceptions, however, may be reduced to one, viz. : that the referee erred in his finding, that the trespasses of Rutledge's tenants on the land of Schwab, even if done with his knowledge and consent, could not give him or his vendee title under the statute of limitations, no matter how long continued.   That this is a sound legal proposition we have no doubt."

*John McGahren* and *Edward A. Lynch,* for appellant.—This is an action of ejectment brought for a strip of land two and three tenths feet wide and fifty-nine feet deep. .

The appellee claims a right to the possession of this land by virtue of a deed or recorded title.   The appellant claims it by virtue of an adverse possession.

The fact of possession is for the · jury ; the kind and length of that possession to be effectual are for the court.   Where such title is asserted, either by the plaintiff or the defendant, the court should see that there is evidence to go to the jury on all the essential points.   If it be wanting as to any of them, then, an essential of title is wanting, and the duty of the judge is plain : RICE, P. J., in Deppen v. Bogar, 7 Pa. Superior Ct. 434, 449.

If one agrees to a trespass which has been committed by another for his benefit this action lies against him, although it was not done in obedience to his commands, or at his request : Bac. Abr. title "Trespass," 448.

Rutledge so far participated in the acts of his tenant, Reed, as to make him equally liable with her.   In trespass the intention of the wrongdoer is immaterial, and, therefore, ignorance that the act in question was a trespass on the lands of another, cannot be set up to prevent recovery : 1 Chitty, Pl. 129 ; Dundas v. Muhlenberg, 35 Pa. 351.

The law is well laid down that any person who is present at the commission of a trespass, encouraging or exciting the same

by words, gestures, looks or signs, or who in any way or by
any means countenances or approves the same, is in law deemed
to be an aider and abettor, and is liable as principal; and proof
that a person is present at the commission of a trespass without
disapproving or opposing it, is evidence from which, in connec-
tion with other circumstances, it is competent for the jury to
infer that he assented thereto, lent to it his countenance and ap-
proval, and was thereby aiding and abetting the same : 3 Green-
leaf's Evidence, sec. 41 ; Brown v. Perkins, 83 Mass. 89 ; Carson
v. Godley, 26 Pa. 111; Reynolds v. Braithwaite, 131 Pa. 422.

If he was present and cognizant of the trespass he would be
jointly liable : Drake v. Kiely, 93 Pa. 497.   He who ratifies a
trespass may be jointly liable : 26 Am. & Eng. Ency. of Law, 576.

The possession of the tenant or agent is the possession of the
landlord : 26 Am. & Eng. Ency. of Law, 586 ; Thompson v.
Kauffelt, 110 Pa. 209.

A leading case in point and in line with the decisions of our
own state is Hitchings v. Morrison, 72 Maine, 331.

*S. J. Strauss*, for appellee.—In such a case the payment of
taxes on the land in dispute is not conclusive of the title, yet
when it occurs with other relevant facts, it is admissible in evi-
dence and is entitled to consideration to show " the extent of
his claim and possession: " McClure v. Jones, 121 Pa. 550;
Irwin v. Patchen, 164 Pa. 51.

The deed from Rutledge to defendant is also a solemn decla-
ration on the part of Rutledge of the extent of his claim, fol-
lowing as it does the dimensions as contained in the deed to
him from Wood, and is practically an assertion that he sold the
defendant what he bought from Wood, neither more nor less.

The intention to claim possession adversely must have been
manifested by Rutledge.   To make a possession adverse there
must be some decisive and unequivocal act or conduct amount-
ing to an adverse and wrongful possession in himself and dis-
seisin of others : Hart v. Gregg, 10 Watts, 185.

There must be an entry by the so-called disseisor.

If, through inadvertence or mistake, part of an adjoining piece
of land is inclosed, making no claim to the piece, but only to
the true line, the possession is not adverse : Commegys v. Car-
ley, 3 Watts, 280 ; Sailor v. Herzogg, 2 Pa. 185.

And why must it be so? Because the statute protects the occupant, not for his merit, for he has none, but for the merit of his antagonist in delaying the contest beyond the period assigned for it, when papers may be lost, facts forgotten, or witnesses dead: Calhoun v. Cook, 9 Pa. 226.

Adverse possession in case of boundaries does not hold with the same force as in possession of an entire tract: Gray v. McCreary, 4 Yeates, 494. And this latter case has been cited with approval in Calhoun v. Cook, supra, and Hoopes v. Garver, 15 Pa. 517, 526.

There is in this case, moreover, proof of a friendly and permissive use of other lands of the plaintiff by Rutledge's tenants concerning the character of which there can be no question.

OPINION BY BEAVER, J., July 28, 1899:

"At common law the ceremony of livery of seisin was necessary to vest title. This custom was never adopted in this country or, if it was, it has been wholly superseded by the use of deeds acknowledged and recorded, which are equivalent to livery of seisin. A deed acknowledged and recorded gives to the grantee legal investiture of the land conveyed and has the same effect as if the grantor entered upon the land and gave actual seisin by the formal delivery of the accustomed turf and twig in the ancient ceremony. In this country actual entry on the land by an heir or a grantee is not generally necessary to consummate his title and give him a seisin in deed. Where the ancestor or grantor was at the time seized of the property or the possession was vacant, the ancestor or grantor having the right to the possession gives the legal presumption in this country that the seisin follows the title and that they correspond with each other:" 1 Kerr on Real Property (1895), sec. 234. The presumption of actual possession, which accompanies the delivery of the deed, can, however, like other legal presumptions, be rebutted by facts. It is very evident, from the testimony in this case, that the plaintiff, who claims title from Isaac Wood, by deed dated June 2, 1873, for a lot fronting eighty-four feet on Dennis alley, never had actual possession of the entire lot. His possession, as was that of his predecessors, was bounded by the stable erected on the said lot by Wood's predecessors in title, which left the strip of land in controversy out-

side and northwest of it.   Robert Rutledge, under whom the defendant claims, purchased a part of the same lot from Isaac Wood, by a deed dated March 31, 1870, the lot being described as measuring thirty-one feet on Dennis alley.   It is admitted that the description contained in these deeds would give the strip of land in controversy to the plaintiff.   The defendant, however, claims by adverse possession.   Both the plaintiff and Rutledge seem to have purchased their respective lots from Wood, under articles of agreement, prior to the dates of their deeds respectively and to have entered into possession under said agreements.   At all events, it plainly appears, without contradiction, that Mrs. Reed, who was a tenant under Rutledge, took possession of the end of his lot fronting on Dennis alley, April 10, 1869.   She found, as she testifies, a coal house fronting on Dennis alley, which she said belonged to Rutledge, built against the barn which she called Harvey's barn, a barn on the Schwab lot heretofore referred to, built by Harvey, who owned the lot before Wood purchased it.   This coal house she used during her occupancy of the premises and it was used and occupied by other tenants and by the defendant, until a short time prior to the bringing of this suit.   A walk was laid along the barn and around the coal shed to Dennis alley, along which alley there was a fence which connected with the Harvey barn on plaintiff's lot.   It will thus be seen that at the date of the plaintiff's deed and for several years prior thereto, Rutledge's tenants had been in the actual occupancy of the strip of land in dispute, the boundaries of the lot being fixed by the side of the stable on the one side and the fence which connected with it on Dennis alley. In view of this fact it is immaterial whether or not the boards nailed against the side of the stable, mentioned by several of the witnesses as constituting a fence, were technically a fence or not.   The boundaries of the lot, as occupied by Rutledge and those who claimed under him, would have been just as well defined by the side of the stable, if the boards had never been nailed thereto, because the coal house was built against the stable and ran along its side and the ground was in other ways fully and completely occupied to that point as a boundary, to the entire exclusion of any other occupancy or occupant.   The occupancy, therefore, was complete, adverse, notorious and hostile.   Rutledge himself claimed the land on more than one occa-

sion. The possession of this strip was unquestionably contin-
uous from and prior to the 10th of April, 1869, down to the
bringing of this suit. Rutledge's tenant, Mrs. Reed, built a
kitchen in June, 1869, upon the portion of the lot fronting on
Dennis alley, which, including the cornice, extended over the
strip claimed by the plaintiff, so far as its length extended.
This kitchen was built, as she testifies, with the knowledge of
Harvey, then in possession of the Schwab lot, who claimed that
" the line was just where his barn stood, which joins my fence."
" He said he had no objection to my building my kitchen right up
to his buildings. I intended to build it that way but the car-
penter told me different. He said I must have the eaves drop
on my own land." In this the witness was corroborated by
L. T. Harvey, a nephew of the man who built the barn, and who
was familiar with the premises from his childhood, who testified
that Rutledge and his tenants occupied the property up to the
shed on the Schwab line, that the coal house stood on the ground
right against the shed, and that, since 1870, no one used the
ground, except Rutledge and his tenants, up to where the shed
stood. He also testified that Rutledge always claimed that his
lot was inclosed in the fence. From this and the testimony of
other witnesses, whose testimony is practically uncontradicted,
it is very clear that the plaintiff's father not only never took
possession of the land described in his deed, so far as the strip
in controversy is concerned, but that, on the contrary, at the
time his deed was made and delivered, the land was in the actual
possession of Rutledge and those claiming under him.

The requisites of a title by adverse possession are clearly and
succinctly stated in 3 Kerr on Real Property, 2294, as follows :
" Adverse possession is the holding of property in the manner
in which the person is not entitled to hold it and receiving
rents and profits thereof, with the purpose of excluding all other
persons, including the rightful owner, therefrom. What con-
stitutes adverse possession is a question of law for the court;
but the facts supporting the claim must be established to the
satisfaction of the jury like any other question of fact. The
reason for this rule is the fact that title being shown, the law
presumes the true owner to be in possession until adverse pos-
session is proved to begin. In order to support an adverse pos-
session and set the statute of limitations running, there must

be an actual entry and user of the property such as the true owner thereof might make, without leave or permission, with the intention to retain the possession and profits thereof as his own. This intention, though it need not be expressed, must be manifest and may be inferred from the manner of occupancy. The essentials to constitute adverse possession are, (1) actual possession which shall be (2) hostile and adverse, (3) continuous, (4) visible, open, notorious and exclusive, and (5) shall be held under color or claim of title. The latter is absolutely indispensable to the creation of an estate by adverse possession and must be continuous, because the presumption is in favor of the true owner. Such possession must be hostile at its inception and continue for the requisite period uninterrupted, with the knowledge and acquiescence of the owner. If the continuity of possession shall be broken, either by lawful entry or by fraud, the protection given by the statute of limitations will be lost. Where the property is claimed by adverse possession, without color or claim of title and naked possession alone is relied on as constituting the title to the land, there must be actual occupancy of the land and not a constructive possession." This statement of the law is drawn from a host of authorities, many of them from Pennsylvania, which it is unnecessary to cite in detail.

Every ingredient of title by adverse possession is present in the case if the testimony of the defendant's witnesses be believed, and if the possession of the tenants is to be deemed the possession of the landlord. But the learned judge in disposing of the defendant's exceptions to the report of the referee says: "All these exceptions, however, may be reduced to one, namely, that the referee erred in this finding that the trespass of Rutledge's tenants on the land of Schwab even if done with his knowledge and consent, could not give him or his vendee title under the statute of limitations, no matter how long continued. That this is a sound legal proposition, we have no doubt." The language of the referee is still more emphatic. In her seventh point the defendant asked the referee to say that the improvements made by the tenants, and the use and possession by them, of the land in dispute were sufficient to affect the plaintiff with notice of the extent of the landlord's possession and claim. He denied this request and added: "I do not think that the tres-

pass of Rutledge's tenants could under any circumstances give him a claim to title of his neighbor's land." This was an erroneous view of the law applicable to the facts of this case, if the uncontradicted evidence be believed. It is undisputed, as has been already pointed out, that the occupancy of the tenants up to the line of the stable on the defendant's lot, was exclusive, continuous, open, notorious and adverse, that is, not permissive, for more than twenty-one years; that, to be more particular, the fence on Dennis alley connected with the stable; that a coal shed belonging to the landlord, built against the stable, erected before the tenant took possession of that end of the lot, was continuously used by his tenants thereafter; that a walk was maintained along the side of the stable, covering in width the land in dispute; that Mrs. Rutledge in 1869, built her kitchen so as to extend the eaves practically to the continuation of the line of the stable; that she closed up the space of twelve or fourteen inches between the side of the kitchen and the stable with a board, and that thereafter she and those that succeeded her used continuously the land along the stable to the alley as a walk from the kitchen door. These were notorious acts, plainly observable by any one, and inferably brought home to the knowledge of the plaintiff. If Rutledge had personally occupied the land in this way, there could be no doubt of his title. How is the case affected by the fact that the occupancy was by his tenants? It is said that he did not authorize the erection of the kitchen, and declined to pay for it. Upon this subject, Mrs. Reed testified as follows:

"Q. Did he know you were building the kitchen? A. Yes, he came up when it was being built. He said it was very nice. I asked him to pay for it, or help pay for it, and he said no, I must pay for it myself."

It is seen therefore, that although he declined to pay for building the kitchen, it was not because he disapproved of its erection. On the contrary, the only reasonable inference from his acts and declarations is, that he knew of, consented to, and approved the work while it was being done. Again, after it was completed, he again leased the premises to Mrs. Reed, and there is no room for the supposition that these subsequent leases did not include the house as it was after it had been enlarged. Whether or not she paid more rent is immaterial. For aught

we know, he might have demanded less rent in subsequent years, if the improvements had not been made. We know not how far this entered into the question of the rent. The important fact is that he rented the premises as a whole, and accepted rent for them as a whole, and as clearly and unequivocally as acts can show intention, adopted and ratified the act done for the improvement of his estate, and for his benefit.

The true rule is, that any person who is present at the commission of the trespass, encouraging or exciting the same by words, gestures, looks or signs, or in any way, or by any means, countenances and approves the same, is in law deemed to be an aider and abettor, and is liable as principal; and proof that a person is present at the commission of trespass, without disapproving or opposing it, is evidence from which, in connection with other circumstances, it is competent for the jury to infer that he assented thereto, and lent to it his countenance and approval, and was thereby aiding and abetting the same: Greenleaf's Evidence, sec. 41; Brown v. Perkins, 1 Allen, 89. That one may adopt and ratify a trespass which has been committed by another for his benefit and then make himself liable although it was not done in obedience to his express command is elementary law.

In Carson v. Godley, 26 Pa. 111, Mr. Justice WOODWARD referred to the case of *Russel v. Prior, cited as being in 1 S. & R. 460, evidently a miscitation, as deciding this question. A tenant for years erected a wall which darkened the ancient windows of a neighbor, and then made an under lease. The party injured brought suit for the nuisance, and recovered damages, and then brought suit for the continuance. Both actions were against the first tenant, the lessor in the last lease, and the question was whether after recovery for the erection, an action would lie against him for the continuance after he had leased to another. "It lies; for he transferred it with the original wrong, and his demise affirming the continuance of it;—he hath also rent as a consideration for the continuance, and therefore, ought to answer the damage it occasions."

So it may be said here, that Rutledge affirmed the continuance of the disseisin, resulting from the acts of his tenants, especially

*Rosewell v. Prior, Salk. 460.

the erection of his building over upon the land in dispute, and his subsequent demises and acceptance of rent.

Whilst, therefore, it does not appear affirmatively that beforehand he authorized the work to be done, it is nevertheless true that he knew of, consented to, and approved of, his tenant's act whilst the work was in progress and accepted the benefit after it was done, if the testimony of the witnesses be believed. It was therefore, incorrect to say that the trespasses of Rutledge's tenants upon the land in dispute even if done with his knowledge and consent could not under any circumstances give him or his vendee title under the statute of limitations.   There was in the evidence more than knowledge and more than consent; there were approvals of the acts, and acceptance and enjoyment of the benefits.

The rule that a referee's findings of fact are as conclusive as a verdict of a jury, does not preclude inquiry into the evidence when it is apparent that the referee failed to find pertinent facts, not because he did not believe the witnesses but because he deemed the facts testified by them immaterial.   We think that the court and referee took an erroneous view of the law, as shown by the referee's answer to the defendant's seventh point of law and the language heretofore quoted from the opinion of the learned judge.   To some extent the facts to which we have alluded depended upon the credibility of the witnesses and whilst their testimony is uncontradicted it is for the referee and not us to pass upon their credibility.

The fact of possession is for the jury; the kind and length of that possession to be effectual is for the court: Groft v. Weakland, 34 Pa. 304, 308; Deppen v. Bogar, 7 Pa. Superior Ct. 434, 450.   In order, however, that there may be no misapprehension as to the conclusions that ought to be drawn from the facts, if their testimony be believed we remark that under the circumstances to which we have alluded the tenants' possession was Rutledge's possession, and their claim was his claim even if there were no independent testimony—and there is ample—of the claims made by him personally.

We therefore sustain the third, fifth, sixth, seventh (so far as it relates to the exception to the answer to the defendant's seventh point of law) and ninth assignments, reverse the judgment and award a new trial.